## W. R. BUFORD ET AL. v. W. C. WASSON.

Decided March 5, 1908.

**1.—Landlord and Tenant—Limitation.**

When a person enters into possession of land by express permission of the owner, at will, such permission creates the relation of landlord and tenant. A tenancy at will may be terminated at any time by either party by notice to that effect from one to the other. The relation of landlord and tenant being once established, limitation will not begin to run in favor of the tenant against the title of the landlord until the tenant publicly disclaims the title of his landlord, and professes to hold in his own right, or under a title hostile and adverse to that of the landlord.

**2.—Same—Assignee of Tenant.**

Where the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately or remotely, holding the possession originally derived. As the first tenant held, so his successor holds, and limitation will not run in favor of the successor except upon the same notice to the landlord as is required of the original tenant. If words be relied upon to prove repudiation of the tenancy by the tenant, then it must be shown that the words came to the ears of the landlord; if overt, hostile acts be relied upon, the proof must cogently show open and notorious appropriation and intention to claim the land adversely.

**3.—Limitation—Sufficiency of Enclosure—Evidence.**

In a suit of trespass to try title, where the defendant had acquired pos-

session of the land in controversy from a tenant of the plaintiffs, evidence as to the character of the enclosure of the land and the occupancy of the defendant considered, and held insufficient to show notice to the plaintiffs of an adverse holding by the defendant, and hence insufficient to show title under the ten years statute of limitation.

Appeal from the District Court of Young County.  Tried below before Hon. A. H. Carrigan.

*R. F. Arnold* and *Leach & Allen,* for appellants.—When a person enters into possession of land by permission of the owner, expressed or implied, for a term, at will or sufferance, he holds in subordination to the title of his landlord, and limitation will not run against the landlord in favor of the tenant, until the tenant gives actual notice or gives express disclaimer to the landlord that he claims adversely and repudiates the landlord's title; or by express hostile occupancy, or by acts or words of no uncertain character, brought "home" to the landlord, that the land is claimed adversely by the tenant.  Carter v. Town of Lagrange, 60 Texas, 636; Udell v. Peak, 70 Texas, 547; Oury v. Saunders, 77 Texas, 278; Hurley v. Lockett, 72 Texas, 262; Cobb v. Robertson, 99 Texas, 138; Runge v. Gilbough, 99 Texas, 539; Juneman v. Franklin, 67 Texas, 411; Crosby v. The First Presbyterian Church, 45 Texas Civ. App., 111.

Where the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately or remotely, and as the first tenant held, so his successor holds, and limitation will not run, in the absence of notice, contemplated by law, given by first tenant of repudiation of landlord's title, in favor of his successor, unless same notice is given by the successor, required of original tenant.  Same authorities.

The landlord is entitled to rest upon the presumption that his tenant will carry out his contract in good faith, and that he will do no act inconsistent with his duty, without giving express notice, under the law, that he has ceased to be his tenant.  Udell v. Peak, 70 Texas, 547; Juneman v. Franklin, 67 Texas, 411.

In order to acquire limitation of land used for grazing purposes, the occupant must enclose the same with a substantial enclosure, or put such permanent improvements thereon as will give notice to the owner of adverse possession, and such enclosure may be made partly by the use of natural barriers, but in such case the natural barriers must be so used, in connection with artificial barriers as to distinctly indicate that they are relied on to enclose the land, and to keep out persons desiring access thereto, such as will give notice of an adverse claim, and such natural barriers, in connection with a substantial fence, or other substantial enclosure, must be of such substantial and permanent character as to clearly indicate the intention to use the same as part of the enclosure.  Polk v. Beaumont Pasture Co., 26 Texas Civ. App., 242; Vineyard v. Brundrett, 17 Texas Civ. App., 147; Cochran v. Meorer, 31 Texas Civ. App., 495.

*C. W. Johnson,* for appellee.—The evidence established legal title in appellee, under the ten years statute of limitation, and the trial

court correctly rendered judgment for the appellee. Sayles' Civil Stat., art. 3343; Sayles' Civil Stat., art. 3347; Burton v. Carroll, 96 Texas, 325; Link v. Bland, 43 Texas Civ. App., 519; Dunn v. Taylor, 42 Texas Civ. App., 241; Davis v. Davis, 70 Texas, 123.

LEVY, ASSOCIATE JUSTICE.—This was a suit brought by Mrs. Amelia Clark against W. R. Buford and W. C. Wasson, in the form of trespass to try title to two tracts of land; one tract being situated in Young County, and the other tract in Stephens County. The tract in Stephens County was of the Benjamin McGaha survey. Mrs. Clark alleged that W. R. Buford was the owner of a one-half undivided interest in the two tracts of land, and prayed for the partition of the said lands, between her and the said Buford. Buford answered by adopting the pleadings and the prayer of Mrs. Clark. Wasson answered waiving the personal privilege to be sued in Stephens County, his residence, and pleaded not guilty, general denial, and specially the statute of limitation of ten years, to all that part of the McGaha survey lying west of the Breckenridge and Crystal Falls public road in Stephens County, Texas, consisting of 100 acres or more; and disclaiming as to all other lands described in the plaintiff's petition.

The case was submitted to the court, who rendered judgment partitioning the land between the codefendants Clark and Buford, except the land claimed by limitation by the appellee Wasson, which was adjudged by the court in favor of appellee under his plea of ten years limitation. Mrs. Clark and Buford appealed from this judgment so entered, to this court, and seek to have the same revised for errors assigned.

The evidence establishes the material facts herein given. It was agreed in writing that appellants owned in fee simple the McGaha survey except the part which might be affected by appellee's plea of limitation, and that appellee is the owner in fee simple of the Pinkney survey, which lies north and west of the McGaha survey. The following is a rough map of the two tracts and the situation of the land in controversy:

One, Ballard, acquired a part of the Pinkney survey in 1878, and settled on it. Appellants at the time were the owners of the McGaha survey, which, in the patent, does not call for any surrounding surveys. Ballard enclosed 100 acres of his land, and made a field and cultivated the same. After his purchase and settlement on his land Ballard obtained verbal permission from appellant Buford to use that portion of the appellant's land next to the river and adjoining the Pinkney survey on the south, to graze his work horses. Buford consented that Ballard might so use the land. Ballard, for the purpose of the use mentioned, erected a mesquite brush fence from the middle of the south line of the Pinkney survey southwesterly to the banks of the river. This brush fence so erected, and the banks of the river, and Ballard's own field fence, made an enclosure sufficient to confine horses and cattle. The McGaha survey at the time was unoccupied and unenclosed land. Ballard continued to so use his land for pasture land, and in subordination to the title of appellants.

The premises owned by Ballard on the Pinkney survey were purchased in 1883 by the appellee from Ballard, under bond for title; and when the notes were paid in 1885 appellee got a deed from Ballard and had the same recorded in 1886. The deed was made by Ballard and wife, reciting $2000 cash, and called for 198 acres more or less of the Pinkney survey, though as a fact by measurement from course and distance the deed conveyed 137 acres. The field notes of the Pinkney survey do not call for the McGaha survey, nor does the deed from Ballard to appellee. The N. E. corner of the Pinkney survey calls for a stake and mound in the prairie, no bearings. In the survey of the land no corners could be found on the south going towards the river.

In the spring of 1884 the appellee began at the southeast corner of the Ballard field and erected a mesquite pole and brush fence along the public road to the river bank. No change was made in the field fence except to straighten the lines of the same. The mesquite fence so constructed by appellee continued in repair and out of repair from the time of its completion in the spring of 1884, till the same was washed out by a flood in September, 1900, when it was replaced at once with a new and substantial wire fence. The river is shown to have water four to fifteen deep except at one shoal place, with the banks steep and from six to ten feet high, and the river bed about thirty feet wide. At the shoal place on the river appellee constructed a short wire fence about seventy-five yards long. The Ballard brush fence was not removed, but continued. The land as thus enclosed with the mesquite fence on the east, and the field fence on the north, and the river bank on the south and southwest, and the Ballard fence on the northwesterly portion, enclosed the portion of the McGaha survey here in controversy. Appellee used this ground as thus enclosed for pasturing horses.

Appellant Buford lives in Hopkins County, Texas, and Mrs. Clark lives in Nacogdoches County, Texas. The appellant Buford made a visit to the land, the date of which is not shown, but inferably before appellee purchased, and found that Ballard was only using the land as was permitted to be done, and not in hostility to his title. The

evidence does not show that appellants made any more visits to the land until 1899, and at which time the evidence shows that appellee refused appellants possession and asserted title to this pasture land. This suit was filed September 28, 1905. Further portions of the evidence are set out in detail under the assignments of error discussed.

Appellants' first and second assignments are submitted together. In the first assignment it is contended, in effect, that the court erred in rendering judgment against the appellants in favor of appellee, for all the Benjamin McGaha survey lying west of the Breckenridge and Crystal Falls public road, under his plea of ten years limitation, because the appellee and those under whom he claims entered on the land in controversy as tenants of appellants, and held at the time of the sale of the Pinkney survey by Ballard to appellee, and those under whom he claims, in subordination to the title of appellants, and because the undisputed evidence shows no notice given to appellants by appellee or his vendors until 1899, that the title to the land was being claimed by him or them adversely to the title under which he or they entered. In the second assignment it is contended that the court erred in holding, under the law and facts of this case, that the enclosure of the land erected by appellee and those under whom he claims, was sufficient for the full period of the ten years to give notice of an adverse claim by appellee to appellants, without an express repudiation of their title by acts or words of adverse claiming, because the undisputed evidence shows that appellee and those under whom he claims were tenants of appellants. The appellants' third assignment of error is considered in connection with the first and second. In this assignment it is contended that the court erred in his conclusion that the enclosure of the land was sufficient to give notice of an adverse claim, and was such notorious, hostile, actual and visible appropriation of the same for the full period of ten years as contemplated by law, because all the evidence shows up to 1899 the enclosure consisted of a pole and brush fence on one side and the irregular banks of the river on the other side, and there being no other improvements, and never having been cultivated, and used alone for grazing purposes.

The appellee replies to the first and second assignments in a counter-proposition, claiming, in substance, that these assignments are unsupported by any phase of the testimony; and to the third assignment he contends that the enclosure, with the acts of appellee therewith, was sufficient to give notice of adverse possession and sufficient to support the plea of limitation.

We think the evidence in the record is without conflict that Ballard, the immediate predecessor of appellee, entered the land in controversy by permission of the appellant Buford, cotenant of Mrs. Clark. The evidence of Buford shows that Ballard wanted to use the land which was next to the river and adjoining his tract on the south, to graze his work horses upon "so that every morning he would not have to go so far in the dew to get his work horses." Ballard explained to Buford at the time that he would only have to run a brush fence from the corner of his own fence to the river, and that the banks of the river would then keep his horses in. Buford gave

his permission to the use of the land to that extent. Ballard replied to the appellant Buford "that he would be much obliged; that the use of the land would be a great accommodation to him." The land was not enclosed at the time of this permission to use the same. For the purposes desired and granted Ballard built a brush fence of mesquite brush from the south line of his Pinkney survey, which he then owned and occupied, southwesterly to the river. On his next visit to the land, the appellant Buford describes the fence that Ballard had constructed "by cutting small mesquite trees or bushes about as large as my arm and ten to fifteen feet high, cutting them nearly down so as to leave the tree on the stump, and then cutting another and fastening the top of the last tree to the next stump, and so on until the fence reached the river. These stumps were about three or four feet high."

It does not clearly appear when Ballard got permission from the appellant to use the land for his horse pasture, but it is sufficiently inferable from the record that it was while he owned and occupied the Pinkney survey and before the appellee purchased the Pinkney survey from Ballard. Ballard used the land for grazing his horses only; never cultivated it or made improvements on it of any kind. There is an entire absence of proof that any other character of claim than mere user was asserted by Ballard, and that user was in recognition of appellant's title to the land; and we conclude that Ballard held and used the land in recognition of the appellant's title, and not adverse to the appellant's title. The status of the tenancy relation between Ballard and appellants is not positively shown to be known to appellee; but it appears as a fact without conflict, that appellee entered the premises under Ballard, holding the same possession and character of possession of the premises originally derived by Ballard from appellants; and that appellee obtained possession of the premises through and from and as successor to Ballard and with Ballard's consent; and that Ballard at the time was a tenant recognizing appellants' right and title; and that appellee at all times held the possession under the right of Ballard, by virtue of which he entered and claimed and asserted. There is a privity and constructive tenancy in the possession of the premises by appellee.

When a person enters into possession of land by express permission of the owner, at will, such permission creates the relation of landlord and tenant. (Robb v. San Antonio St. Ry., 82 Texas, 392.) And would require each to give notice of its determination. (Wade on Law of Notice, sec. 584.) But tenancy at will may be determined at any time by either the landlord or the tenant. (Robb v. San Antonio St. Ry., *supra*.) The tenant during such tenancy holds the land in subordination to the title of the owner, who is his landlord. (Tiedeman on Real Property, sec. 171.) The relation of landlord and tenant being once established, limitation will not run against the title of the landlord in favor of the tenant on the land until the tenant publicly disclaims his landlord's title, and professes to hold in his own right, or under a title, hostile and adverse to that of the landlord, and the statute of limitation will begin to run from the time of such disclaimer. (Turner v. Smith, 11 Texas, 620; Rob-

inson v. Wood, 15 Texas, 1.) This is the rule, because, by reason of the relation between the parties, the landlord is entitled to rest upon the presumption that his tenant will carry out his contract in good faith, and that he will do no act inconsistent with his duty without giving express notice in some way under the law, that he has ceased to be his tenant.

Where the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant, immediately or remotely, holding the possession originally derived; and as the first tenant held, so his successor holds; and limitation will not run in favor of his successor in the absence of his notice, contemplated by law, unless the same notice is given by the successor as required of the original tenant. (Carter v. Town of LaGrange, 60 Texas, 636; Cobb v. Robertson, 99 Texas, 138.) This is so because the tenant, and his successor holding the same possession originally derived, can not change the character of the tenure, by his own act merely, to enable him to hold against his landlord who reposes under the security of the tenancy, believing the possession of the tenant to be his own, held under his title and ready to be surrendered by demand of possession. The tenant may at any time repudiate the relation and set up limitation. (Hudson v. Wheeler, 34 Texas, 356.) This rule means that when the relation is dissolved, then each party is to stand upon his right. In order, however, to have this effect the repudiation or disclaimer by the tenant must be open, continued, notorious and adverse. This is required in order to preclude all doubt as to the character of the holding or the want of knowledge on the part of the owner.

But the purpose and intention to repudiate and disclaim tenancy is not alone sufficient to avail of limitation. The appellee must controvert the presumption of his possession being under tenancy, and that the landlord knew such purpose and intention of repudiation and adverse holding. Establishing and "bringing home" this knowledge to the appellants, then the appellee would occupy the same legal attitude as any other stranger relying on the plea of limitation and adverse holding for title; but until this knowledge is brought home to the owner, in some way under the law, the tenant is not in a position where the statute of limitation will run against the right of the owner to recover possession of the premises. This knowledge to the appellants can be shown by any acts of the appellee known to the appellants, or from their notoriety supposed in law to be known to appellants, inconsistent with such tenure. If by words, then the words must come to the ears of the appellants; if by overt hostile acts, the proof must cogently show open and notorious appropriation and intention to claim the land adversely. (Word v. Drouthott, 44 Texas, 365.) It is the rule that the landlord's knowledge that the tenant was holding adversely need not be proven beyond all doubt; stronger and clearer proof is required in some cases than in others. (Reusens v. Lawson, 21 S. E., 347.)

Appellee's right to recover under his plea of limitation of ten years is dependent upon the invoking of these principles of law to the case. In this case notice of repudiation and adverse possession

and holding must depend upon the sufficiency of the enclosure in connection with the character of its use by appellee. To determine this question it is necessary to review the facts in this case, and to decide whether the character of facts as proven is sufficient to entitle the appellee to set up limitation, to the protection of the statute. It is conceded that from 1899, when Buford and Ballard had the talk together, that sufficient actual knowledge was then imparted to the appellants of adverse holding that would start the statute of limitation in operation against the appellants from that date; and the decision of this case, therefore, deals solely with the question as to time prior to that date and not subsequent to that date. The required ten years from 1899 to September 28, 1905, when suit was filed, had not elapsed.

Appellee says that after he purchased the premises from Ballard he built a fence on the southeast corner of the Ballard field to the edge of the river bank, by putting mesquite forks two and one-half or three feet high in the ground by means of a post auger, placing poles in the forks, and the forks being seven or eight feet apart; and placing stakes on the poles, and then riders on the stakes above and over the lower forks and poles. The brush on the top poles was not cut off, but the poles were put on with the brush on them, thus making a fence, the lower pole of which was eighteen inches or two feet from the ground. The river bank was used as a natural barrier on the south side. The wire fence of seventy-five yards length was put at the shoals on the river. The appellee claims that the structure on the east side was kept up and closed up from its completion to the time the wire fence was put there in 1900. But it is apparent from the testimony as to the permanency and condition of the structure on the east side. Appellant said that when he visited the land in 1899 the fence "seemed to be the same fence that was there when Ballard was there, only it was very rotten, had fallen down in many places, especially at the top, where trails or tracks were made by stock passing through the dead brush." Another witness of the appellants in his deposition says he had lived near the place for twenty-five years, and that the fence put there by the appellee would have to be repaired before each year expired, and the land was "outside a considerable portion of almost every year, and regarded as unenclosed." And further, "it was not such an enclosure as would turn cows at all, and would turn horses only while it was new." All the evidence shows that this land was only used for grazing purposes. It is not very clear from the record that it was used for grazing continually. No improvements were placed on the land. It was not cultivated. There is evidence that a roadway ran through the land from the house in the field to a passageway through the fence on the east side, leading to the public road near the bridge across the river, and was used by the occupants of the land. But there is no evidence to the contrary that it was not there when Ballard occupied the premises. Appellee says he exclusively used the premises, and the fence was sufficient to confine stock, and, together with the banks of the river, made a sufficient enclosure for the purpose. There is no evidence that appellants, who resided

in other counties, had any actual notice that the land was claimed adversely by the appellee.

Grazing cattle or horses on the land is not of itself sufficient notice, because that would not be an act done with the premises inconsistent with the privilege of his tenancy, but was the same privilege expressly granted Ballard. Merely because a landowner neglects to disturb his possession the tenant acquires no permanent rights. (Texas & P. Ry. v. Torrey, 16 S. W., 547.) Taking the testimony of appellee as to the building of the brush and pole fence, and the enclosure of the premises and the use made of it, are they sufficient to "express disclaimer" of the tenancy of the premises, or do they express "hostile occupancy" of "no uncertain character" as to make notice, under the law, to appellants of the repudiation of their title and adverse possession? In Coberly v. Coberly, 87 S. W., 960, the court says: "It has been uniformly held that cogent proof must be produced of such adverse holding as indicates that a cotenant in possession has unfurled the flag of conquest and exclusive possessory rights upon the land, and planted himself under the folds of that flag. Something more is expected of him than is required at the hands of those not cotenants."

Concede that under the evidence the enclosure as a whole afforded appellee a means of defense against intrusion or egress of stock on the premises, yet the character of the fence on the east side for the purposes of notice of adverse holding is equivocal, and in the very material and build of the fence indicates a temporary structure. As a witness in the case says in his depositions, "so as to make a sort of enclosure for holding horses while they were being gathered in the spring of the year." The only change in the manner of possession made by the appellee that was different from Ballard's, was to make the fence further, but not longer, on the east side, and a small string of fence next to the shoals on the river. The Ballard fence remained as it was. The use made of the premises by the appellee was the same as Ballard made, and perfectly consistent with the use that Ballard made. The river banks were used by the appellee the same as Ballard used them, with the exception of the fence next to the shoals. The appellee's deed did not call for the river on south and did not call for the McGaha survey, but for the Pinkney survey, and appellants took no legal notice from the record of the same in consequence. All the evidence that appears in the record to publicly express a disclaimer of the tenancy is the fence on the east side. The structure, build and continuity of the brush and pole fence up to 1899 is shown by a preponderance of the evidence to be but a frail, loose and temporary structure. It washed away in the overflow of 1900. It did not import evidence of a permanent and continuing means of appropriation of the premises, because the premises were "outside a considerable portion of almost every year."

We do not think the evidence sufficiently clear and cogent to establish the continuity of the fence prior to 1899, or that the premises were segregated and enclosed by that character of fence, real and substantial, as contemplated by law, to reasonably indicate adverse appropriation. The utmost effect that can properly be given to the

testimony in the record is that the appellee, by pasturing stock on the premises and by means of a brush and pole fence on the east side next the road, at times down, with the irregular banks of the river on the other side, maintained some sort of casual possession of the premises up to 1899, when the appellant Buford visited the land. In this conclusion the premises in controversy presented the absence of that notoriety and indicia of ownership or adverse possession which constitutes so important an element of repudiation and hostile possession to the owner. The general principle which underlies this class of cases is, that the acts and conduct relied upon as evidence of abandonment of the tenant relation, and adverse holding, must be positive and unequivocal and inconsistent with the permissive use originally derived from the former landlord. Quoting an expression of the court in Blankenship v. Douglas, 26 Texas, 230, "Possession, to be equivalent to registration, or, in other words, to amount to actual notice or reasonable information of the claim of the other party in possession, must be open and visible, or at the least must not be of such a character as is calculated to deceive the public." We are of the opinion that where, as in this case, the character of the tenant's possession is so limited and uncertain of adverse possession as to afford a fair presumption that the tenant did not intend to set up a claim to the title, it is proper ground for saying it was not notice to the landowner of adverse possession. This question is decisive of the case. (Freedman v. Bonner, 40 S. W., 47; Richards v. Smith, 67 Texas, 610.)

Because of the insufficiency of the evidence in this case to show notice to the former landlord of an abandonment of the relation of tenant, and adverse possession before 1899, and because the character of the fence erected, and the loose and equivocal manner of the maintenance of the same by appellee for the period before 1899, it was not sufficient to give notice of an adverse claim by the appellee to the appellants, and the appellee is not entitled to recover the premises under his plea of limitation of ten years. The judgment of the District Court awarding to the appellee title to the land in controversy on this appeal, is ordered reversed, and the judgment is here rendered that appellants do jointly recover of the appellee the title and possession of the land in controversy on this appeal, with costs of this court and the District Court.

*Reversed and rendered.*

Writ of error refused.