### GORDON et al. v. GORDON et al.　(No. 2305.)

(Court of Civil Appeals of Texas. Texarkana. July 9, 1920. Rehearing Denied Oct. 7, 1920.)

1. Adverse possession ⬅106(4) — Purchase followed by 20 years' possession and improvement gives title.

A purchase of part of a tract of land accompanied with more than 20 years' possession of the part bought and the making of improvements gives title to the land.

2. Appeal and error ⬅1011(1)—Finding on conflicting evidence conclusive.

The Court of Civil Appeals is bound by the trial court's finding of fact on conflicting evidence.

3. Landlord and tenant ⬅66(2)—Tenants cannot deny landlord's title.

Tenants cannot deny their landlord's title admitted by them to exist in the landlord, be-

ing estopped until they disclaim the landlord's title, and propose to hold in their own right, and under hostile and adverse title.

4. Landlord and tenant ⬅66(1) — Payment of rent evidence of permissive occupation preventing from claiming possession was adverse.

Payment of rent is evidence of permissive occupation acknowledging a tenancy which prevents the tenant from claiming that his possession was adverse to the person to whom he paid the rent.

Appeal from District Court, Gregg County; Chas. L. Brachfield, Judge.

Suit by Monroe Gordon and others against C. M. Gordon and others. From judgment for plaintiffs, defendants appeal. Affirmed.

The appellees sued the appellants in trespass to try title to 167 acres of land. The appellants pleaded not guilty and the statute of limitation of ten years to 50 acres of the land. The court rendered judgment in favor of the appellees for the land.

Mark Gordon, the agreed common source of title, purchased 217 acres of land from Mary M. Angell on January 9, 1896, and at once moved upon the premises, and continued to reside thereon to the time of his death in 1914. He sold 50 acres out of the tract to Monroe Gordon, leaving 167 acres in suit. The appellees are the adult children and only heirs of Mark Gordon, and they lived upon the land with their father. According to the evidence in behalf of the appellees, it appears that Frances London and her son, Cull Gordon, have been living on the premises in suit for many years, in a house specially built for them, as tenants, paying a part of the crops produced as annual rental of the land occupied and used up to about eight years before the filing of the suit; and according to the evidence of the appellants it would appear that the appellants lived for several years on the premises by sufferance of Mark Gordon, and Frances London later purchased the particular 50 acres from Mark Gordon, made valuable improvements thereon, and continued in possession as owner thereof. Frances London, a defendant, testified:

"I claim the 50 acres because I helped him [Mark Gordon] to buy it and pay for it, and he [Mark Gordon] let me have 50 acres of it. Mark Gordon came to me and said, 'Frances, you helped me to buy this land, and I will give you 50 acres' if I would help him pay off a note on it. He took a bale and a half of my cotton and sold it, and it was not money enough, and he came back and said he did not have money enough, and I let him have a $20 gold piece, and he carried it and paid it on the note. It must have been 20 years ago. I have never paid a nickel rent on any of the land. He and I [Cull Gordon] have stayed there on the place together for 30 years."

---

There is proof that Mark Gordon had a house built on the premises for Frances London, and that is the house she has continually occupied. The 50 acres was fenced by Cull Gordon in 1907. Monroe Gordon, a plaintiff, testified:

"These notes against the land were paid off annually. My father paid them, and he and I paid them. Frances London did not help pay off some of the notes. I know that she did not. I know that she did not give my father part of the money to pay off these notes, for he and I paid them off."

There is also testimony in behalf of the plaintiffs that "Frances London never paid taxes on the land." Further:

"I know Cull and his mother paid rent to my father during his lifetime; I know because my father had a rent crip, and they put the corn in there every year; Cull Gordon did. * * * We all paid rent. * * * Cull paid rent to my father until he died; they worked on halves, then one-third and one-fourth of the crop."

Thus the evidence is conflicting as to the character of possession held by the appellants.

The court made the findings of fact: (1) That the appellants Frances London and Cull Gordon, her son, were tenants at will or by sufferance of Mark Gordon; (2) that Mark Gordon "never knew, or was any claim made during his life, that the defendants were holding any of the property adversely to him," and "that said Mark Gordon never knew during his lifetime of any claim of ownership by either Frances London or Cull Gordon"; and (3) that the appellants failed to establish by the proof any adverse or peaceable possession of the land against Mark Gordon for 10 years.

Young & Stinchcomb and Riley Strickland, all of Longview, for appellants.

R. S. Wyche and F. J. McCord, both of Longview, for appellees.

LEVY, J. (after stating the facts as above). By the first and second assignments of error it is insisted that the court erred in rendering judgment in favor of the appellees for the 50 acres of land, "because the undisputed testimony shows that the defendants had lived on the premises for over 30 years and had asserted claim thereto against the entire world, and the same had been under fence for over 10 years."

[1-3] The evidence does show that the defendant Frances London and her son Cull Gordon have lived on the premises for about 30 years to the time of the suit, and that the 50 acres had been fenced for over 10 years; but the evidence is conflicting as to whether the appellants were on the 50 acres in controversy as owners or as tenants. The appellants claim by the evidence that Frances London purchased the particular 50 acres from Mark Gordon over 20 years ago, was put in possession, and made valuable improvements thereon. A purchase of this character, accompanied with possession and the making of improvements, would give title to the land, and appellants could recover it. Lowry v. McDanial, 58 Tex. Civ. App. 424, 124 S. W. 710. But any purchase of or advancement of payments on the land is emphatically denied by the evidence, as seen, of Monroe Gordon, and the evidence of the appellees also is that the appellants were tenants all the time they have been on the land till the death of Mark Gordon. The court settled the conflicting evidence in the finding that "the proof shows that they [defendants] were tenants of the said Gordon at will or by sufferance," and that "the proof further shows that said Mark Gordon never knew during his lifetime of any claim of ownership by either Cull Gordon or Frances London." This court is bound by the trial court's finding of fact upon conflicting evidence, and is not warranted in setting it aside. The finding of the court that the appellants "were tenants of the said Mark Gordon at will or by sufferance" is a finding against the evidence of the appellants that they were purchasers and had a legal interest in the title to the land, and, being tenants on the land, according to the finding, the appellants would not be in a position to deny the landlord's title; for the creation of the complete relation of landlord and tenant has the effect in law of estopping the tenant to deny the title which he has admitted to exist in the landlord. Tyler v. Davis, 61 Tex. 674; McKie v. Anderson, 78 Tex. 207, 14 S. W. 576; Fowler v. Simpson, 79 Tex. 611, 15 S. W. 682, 23 Am. St. Rep. 370.

It is well settled that a tenant in possession cannot deny the landlord's title without disclaiming the landlord's title and proposing to hold in his own right or under title hostile and adverse to that of the landlord. Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275. Unless these facts existed, there would not be legally any adverse possession of the premises by the tenant upon which he could predicate a title in himself by limitation, and the record in this case is not without evidence to support the trial court's conclusion of fact that "the defendants have failed to show peaceable, adverse, and notorious possession against the right of the plaintiffs"; for the witness Monroe Gordon testified:

"Ever since 1890 he [Cull Gordon] has paid rent up to about 8 years ago. He rented as much land as he could work all over the field, anywhere he wanted to work. * * * Cull and his mother [Frances London] stayed there about 20 years. They have been living there using this land and working on the halves and paying rent."

[4] Is this evidence true? That is a question this court cannot pass on, but must take as true in view of the findings of the trial court. Payment of rent is merely evidence of permissive occupation, and, having paid it, the tenancy is acknowledged. If the tenancy in legal effect was recognized by the appellants up to about eight years ago, then the court's conclusion was correct that the appellants have failed to show a completed limitation title by such adverse possession as the law required. The assignments are overruled.

The third assignment is disposed of in the finding of the trial court that the appellants were on the land as tenants of Mark Gordon.

The evidence being conflicting as to whether the appellant Frances London was the owner, or Frances London and Cull Gordon were tenants, this court is, as heretofore stated, bound by the finding thereon of the trial court.

The wording of the finding challenged by the fourth assignment of error is, we think, as contended by the appellants, erroneous. But in view of the legal effect of the court's other findings it becomes immaterial. The legal effect of the finding by the trial court that appellants "were tenants" would be to estop the tenants from asserting title as against the landlord.

The judgment is affirmed.