## DIETZMAN v. SAYLES. (No. 8245.)

(Court of Civil Appeals of Texas. Galveston. Oct. 5, 1922.)

1. Adverse possession ⬳85(3)—Evidence held to sustain finding that plaintiff did not claim land in his inclosure not included within field notes of deed.

In action of trespass to try title in which the plaintiff claimed title by limitation as against adjoining owner, evidence that plaintiff never informed defendant or his vendor that he claimed the land in controversy, and that five or six years before the suit was brought he agreed with the defendant that the division line between them should be established by a surveyor, and that a new division fence should be built on the line so established, and that the fence as it stood at the time of the trial was built on the line so established, *held* to support finding that plaintiff never claimed any land in his inclosure not included within the field notes of his deed, notwithstanding his testimony that he had at all times claimed the land within his inclosure.

2. Adverse possession ⬳66(1)—Plaintiff who did not claim land in his inclosure not included within field notes of his deed did not acquire title by adverse possession.

Where plaintiff did not claim ownership of land within his inclosure not included within the field notes of his deed, as against defendant adjoining owner, he could not acquire title to adjoining owner's land within his inclosure by adverse possession, no matter how long the possession may have continued.

3. Landlord and tenant ⬳66(2)—Possession of land by successor in interest of tenant at will not adverse except on repudiation of tenancy.

If plaintiff's remote vendor was tenant at will as to a strip of adjoining owner's land under agreement with adjoining owner, the possession of such strip by plaintiff was not adverse as to adjoining owner, unless the tenancy was expressly repudiated by plaintiff or his predecessor or the character of their possession and use of the land was so different from the possession and use by plaintiff's remote vendor that the adjoining owner was charged with notice that the agreement creating such tenancy was repudiated.

4. Landlord and tenant ⬳66(3)—Use of land by successors of tenant at will held not of such character as to charge landlord with notice of repudiation of tenancy at will.

Where plaintiff's remote vendor was tenant at will as to strip of land of adjoining owner under agreement permitting him to use land as pasture, the mere fact that plaintiff's vendor and plaintiff inclosed a portion of the land in a field which they cultivated for 15 or 16 years was not such a change in the character of the possession as would charge adjoining owner with notice of the repudiation of the agreement creating a tenancy at will.

Appeal from District Court, Washington County; R. J. Alexander, Judge.

Action by Carl Dietzman against B. P. Sayles. Judgment for defendant, and plaintiff appeals. Affirmed.

A. W. Hodde, of Brenham, for appellant. W. W. Searcy, of Brenham, for appellee.

PLEASANTS, C. J. This is an action of trespass to try title brought by the appellant against the appellee to recover the title and possession of two tracts or parcels of land containing 1.33 acres and .08 of an acre, respectively. These parcels of land are narrow strips lying along the boundary line between lands owned and possessed by the respective parties. They are included within the field notes fixing the boundaries of the land to which appellee holds title by deed, but appellant claims title thereto by adverse possession and claim for more than ten years prior to the entry by appellee.

In reply to appellant's claim of title by limitation, appellee, in addition to a general denial, pleaded in substance that many years ago appellant's remote vendor, W. B. Edwards, who at that time owned the land now owned by appellant and which adjoins the land now owned by appellee, entered into an agreement with appellee's vendor, B. G. Sayles, by terms of which Edwards was permitted to join the fence inclosing his land with a fence which had been previously constructed by said Sayles near the boundary line between the lands owned by said parties, and in consideration of this use of Sayles' fence Edwards expressly agreed and promised that he would not claim any of the land belonging to Sayles that might be included in the Edwards inclosure, and that no claim by limitation would ever be asserted by him against Sayles' title to said land; "that said fences dividing the two tracts of land were built under said agreement, and that the same has been held from that time until this under the same, and that no' one has ever set up openly an adverse claim to said land; that neither the said Dietzman nor any other person holding or claiming said land at any time have ever notified B. G. Sayles or this defendant that they

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

set up any claim to the strip of land in controversy, but the said fence and strip of land has always been known and recognized as the property of B. G. Sayles, under whom this defendant claims."

The cause was tried without a jury and judgment rendered in favor of the defendant below.

At the request of appellant the trial judge filed the following findings of fact and conclusions of law:

"First. That the plaintiff herein, Carl Dietzman, and the defendant, B. P. Sayles, were adjoining landowners, and their respective tracts of land were separated by division fences. The division fences were put up around the defendant's land more than 40 years ago by B. G. Sayles, father of defendant, B. P. Sayles; said B. G. Sayles afterwards conveying the particular tracts of land involved in this suit to said B. P. Sayles, now the legal owner of said tracts of land.

"Second. That the plaintiff, Carl Dietzman, derived his title to the tract of land he now owns through one W. B. Edwards; that said W. B. Edwards owned the tract of land now owned by said Carl Dietzman at the time said tract of land was fenced; and that B. G. Sayles, father of defendant herein, then owned the tracts of land owned by defendant, B. P. Sayles; that at the time said W. B. Edwards fenced the said tract of land now owned by plaintiff, Carl Dietzman, the said B. G. Sayles had his tract of land under fence, and said Edwards requested said B. G. Sayles' permission to be allowed to use and join his, said B. G. Sayles', fence, which said request was granted by said B. G. Sayles; and said W. B. Edwards did join the said fence of said B. G. Sayles; and said fence of Sayles has been used by all of those who have held title to the tract of land now owned by plaintiff, up to the institution of the suit herein.

"Third. That at the time said B. G. Sayles permitted said W. B. Edwards, then the owner of the tract of land now owned by plaintiff, Carl Dietzman, to join and use his, the said B. G. Sayles', fence as a division fence between them, they made and entered into an agreement that neither party was to take any land from the other, or to claim any land that was on either side of said division fence that belonged to the other, nor were they to set up any limitation against each other to any land that was included in their respective inclosures by reason of said division fence; that under this agreement so made between said W. B. Edwards and said B. G. Sayles, the then respective owners of the two tracts of land involved herein, the division fences have been, down to the institution of this suit, kept and maintained as they were at the time said agreement was made.

"Fourth. That August Draeger, the immediate grantor of plaintiff, Carl Dietzman, knew that the division fence on the south side between the two tracts of land was not on the line, but was over on Sayles' land according to a survey made by Dr. Hill, said Draeger recognizing that Sayles had from two or three feet inside of his, said Draeger's, inclosure, and that the fence belonged to said Sayles;

that at the time of the conveyance of the land to the plaintiff, Carl Dietzman, by Draeger, Draeger stated to the plaintiff that the fence on said south side belonged to Sayles, and that Sayles, had two or three feet of land on his, Draeger's, side of the fence. Some five or six years before this suit, said B. G. Sayles and plaintiff, Carl Dietzman, agreed that a new fence could be built on the land between them, to be established by W. B. Francis, the surveyor; and shortly thereafter, W. B. Francis did go upon the ground, surveyed the land, and established the new line where the new fence, built in February, 1921, now stands. The land involved in this suit embraces the strips of land between the old fence and the new fence, on the land established by Francis; that none of the owners of the land through W. B. Edwards to and including the plaintiff herein, Carl Dietzman, ever made any claim to the strips of land involved herein to either B. G. or B. P. Sayles, nor did either B. G. or B. P. Sayles have any knowledge of the fact that either Draeger or Dietzman claimed that Sayles had only two or three feet over the line.

"Fifth. That at the time of the agreement between Sayles and Edwards, stated in the third paragraph hereof, the tract of land that was inclosed by said Edwards was used as a pasture, and said land was so used as a pasture all the time by the subsequent owners, except about one-half of the strip on the south side of the division line, which had been put in cultivation by either the plaintiff, Carl Dietzman, or his grantor, Draeger.

"Sixth. That the plaintiff, Carl Dietzman, went into possession of the tract of land involved in this suit about 16 years ago; that he lived upon same about 13 years himself, and has had a tenant upon the same for the past three years; that at the time he purchased said land from Draeger, Draeger told him that the fence on the south side of the Sayles line was not on the line but was some two or three feet over on Sayles' land, and that the fence belonged to Sayles.

"Seventh. That the plaintiff, excepting the strips of land involved in this suit, has all the land he purchased from Draeger, and the said Carl Dietzman has paid taxes only on the number of acres of land he purchased from Draeger; and the strips of land involved herein are not included in the field notes of the land purchased from Draeger by said Dietzman, but are included in the field notes of the land formerly owned by B. G. Sayles, and by B. G. Sayles conveyed to B. P. Sayles.

"Conclusions of Law."

"The court held that under the foregoing findings of fact W. B. Edwards became a tenant at will of B. G. Sayles, for whatever land he had within his inclosure, under the agreement made with said B. G. Sayles at the time he was allowed to join the fence of said Sayles, and that this relationship having been established between Edwards and Sayles, it attached to all who took title through Edwards, including the plaintiff, Carl Dietzman; that under said findings of fact there is not shown any repudiation of the relationship thus created between said Edwards and Sayles by any subsequent holder of the Edwards title up to and including the plaintiff, Carl Dietzman. It being

the opinion of the court that under said findings of fact this case falls clearly within the rule laid down in the cases of Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275, and West Lumber Co. v. Sanders (Tex. Civ. App.) 225 S. W. 828; and for the reasons therein stated the court finds for defendant and orders judgment rendered accordingly."

All of these findings of fact are sustained by the evidence, and we adopt them as the fact conclusions of this court.

Under appropriate assignments of error appellant contends that as the undisputed evidence shows that he and those under whom he claims "have been in peaceable adverse possession of the land in controversy, having same completely inclosed by a sufficient fence, cultivating, using, and enjoying the same for more than 40 years," judgment should have been rendered on his plea of limitation, notwithstanding the agreement between Edwards and B. G. Sayles, because appellant had no notice of this agreement, and his long-continued possession and use of the land was sufficient notice to Sayles that the agreement, if it ever existed, had been repudiated by appellant.

[1] This contention cannot be sustained for two reasons. In the first place, the evidence is sufficient to sustain the finding that appellant's possession was never adverse to appellee. The trial court found, upon sufficient evidence, that appellant never informed appellee or his vendor, B. G. Sayles, that he claimed the land in controversy, and that five or six years before this suit was brought he agreed with appellee that the division line between them should be established by W. B. Francis, a surveyor, and a new division fence should be built on this line, and that the fence as it now stands was built by appellee on the line established by Francis. These facts are sufficient to support the conclusion that appellant never claimed any land in his inclosure not included within the field notes of his deed, notwithstanding his testimony that he has at all times claimed all the land within his inclosure.

[2] It goes without saying that if appellant did not claim the land his possession was not adverse, and he could acquire no title by such possession, it matters not how long it may have continued.

[3] If, however, appellant had claimed the land, his possession having been obtained under Edwards, who was a tenant at will of appellee's vendor, such possession could not be considered adverse unless the tenancy was expressly repudiated by appellant or his vendor, or the character of their possession and use of the land was so different from the possession and use of Edwards that appellee was charged with notice that the Edwards agreement was repudiated.

[4] There is no evidence of any express

repudiation by appellant or his vendor, Draeger, and the mere fact that they inclosed a portion of the land in a field which they cultivated for 15 or 16 years was not such a change in the character of the possession as would charge appellee with notice of the repudiation of the Edwards agreement.

This was the conclusion of the trial court, and we think the cases of Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275, and West Lumber Co. v. Sanders (Tex. Civ. App.) 225 S. W. 828, cited by the court, sustain the conclusion.

It follows that the judgment should be affirmed, and it is so ordered.

Affirmed.