**OVERSTREET et al. v. HOUSTON OIL CO. et al.**

No. 2230.

Court of Civil Appeals of Texas. Beaumont. Nov. 2, 1933.

Rehearing Denied Nov. 8, 1933.

O. S. Parker, of Beaumont, Jas. F. Parker, of Kountze, and J. L. Manry and R. H. Jones, both of Livingston, for appellants.

Williams, Lee, Hill, Sears & Kennerly, of Houston, for appellees.

COMBS, Justice.

This suit is in trespass to try title, and involves 160 acres of land out of I. & G. N. section No. 36 in Polk county, Tex. Appellants, as plaintiffs, filed this suit in the district court of Polk county against appellees, as defendants, claiming title to the land involved under the statute of limitations of ten years. For convenience we will designate the parties as in the trial court.

Plaintiff Mrs. M. S. Overstreet is the surviving widow, and the other plaintiffs are the surviving children and heirs, of Sam Overstreet, deceased, upon whose possession and use of the land they rely to establish their limitation title. Defendants are the record owners of the land.

The trial was to a jury, and at the conclusion of the evidence the court, on motion of the defendants, instructed a verdict in their favor, and judgment was entered thereon, from which the plaintiffs have prosecuted this appeal.

There is no material conflict in the evidence. The claimed limitation period began in 1893, when Sam Overstreet took possession of, and began cultivating, a small field of about 3 to 5 acres on the land in controversy. The testimony is to the effect that Overstreet continued to cultivate the field continuously until about 1904, when he abandoned it, a period of twelve years. The evidence is sufficient, we think, to raise an issue of fact for the jury on the question of limitation, unless the introduction in evidence by defendants of a lease contract covering I. & G. N. section No. 36, executed March 16, 1880, by D. S. D. McNeely, from whom Sam Overstreet acquired his possession, to John S. Kennedy et al., under whom the defendants deraigned their title, had the effect, as a matter of law, of operating an estoppel of plaintiffs' claim of adverse possession and limitation.

The facts pertaining to this question are substantially as follows: I. & G. N. section No. 36, of which the land involved is a part, was patented to I. & G. N. Railway Company March 9, 1878, and the railroad company, by deed dated March 10, 1879, conveyed it to John S. Kennedy, Samuel Thorne, and Walter Phelps. Previously, in 1874, D. S. D. McNeely had settled on an adjoining tract of state land, which was later patented to him, and is referred to in the testimony as the McNeely survey. In 1874, after establishing his home on his own survey, McNeely opened a small field of about 12 acres on the land in controversy, and began cultivating it. He cultivated this field continuously until 1892, when he moved to Lamar county, Tex. The year following McNeely's removal, the land was cultivated by him by a tenant, Early Williford, for one year, and in 1893 McNeely sold his own survey to Sam Overstreet, and, according to the testimony of plaintiffs' witnesses, McNeely at the same time sold his claim, or improvements, on the land in controversy to Overstreet, who took over the possession of the field from the tenant Williford, and thereafter cultivated it continuously each year until about 1904, when he abandoned it. It appears that the possession and cultivation of the field was continuous from the time D. S. D. McNeely began it, about 1874, until it was abandoned in 1904 by Sam Overstreet. About 1884 E. S. Holland, a stepson of D. S. D. McNeely, and who testified as a witness for defendants in this case, cleared up and began cultivating a small field of 4 or 5 acres adjoining that of his stepfather on the land in controversy. He later turned that field over to McNeely, who seems to have cultivated it, along with the other field, until he surrendered his possession to Overstreet in 1893. In the meantime, E. S. Holland acquired another field on I. & G. N. section No. 36 from B. E. Williford in the late 1880's, and cultivated it until about 1902.

Under date of March 16, 1880, D. S. D. McNeely executed a lease contract in favor of Kennedy, Thorne, and Phelps covering I. & G. N. section No. 36. Appellees contend that the execution of this lease by McNeely created the relation of landlord and tenant between him and those under whom defendants claim, and had the effect of estopping, not only McNeely, but also Sam Overstreet, who succeeded to his possession, from establishing title by limitation, since neither a tenant

nor one taking possession under him can dispute the landlord's title. Since the effect of the lease is the controlling question in this case, we will set it out in full. The lease is as follows:

"This Indenture made the Sixteenth day of March, 1880, between John S. Kennedy and Samuel Thorne, of the City, County, and State of New York, and William Walter Phelps, of Bergen County, State of New Jersey, Lessors of the first part, acting by their Agent and Attorney in fact, Ira H. Evans, and D. S. D. McNeely of Polk County, Texas,

"Witnesseth: That in consideration of the covenants and agreements herein contained on the part of the party of the second part, to be kept and performed, the said parties of the first part hereby grant, demise and lease unto the said party of the second part Six (640) hundred & forty acres of land, out of Survey No. 36 made by virtue of Certificate No. 3871 issued to the International & Great Northern Rail Road Company by J. J. Gross, Commissioner of the Genl. Land Office on the 24th day of May, 1875. Said Survey is situated in Polk Co. Texas on the waters of Big Sandy Cr. about 24 miles S. E. from Livingston, to include all improvements now held by the said D. S. D. McNeely * * *

"To have and to hold all and singular the above described and demised premises, with the appurtenances, unto the said party of the second part, Lessee herein, from the First day of January, 1880, for the period of twelve (12) months ending on the thirty-first (31) day of December, A. D. 1880, yielding and paying therefor unto the said parties of the first part, Lessors, their successors or assigns the sum of One ($1.00) Dollar the receipt of which is hereby acknowledged * * *

"And the said Lessee hereby covenants and agrees, with and to the said Lessors, that during the said term he will not cut or permit to be cut any timber on the said land in excess of what may be required by him for the uses and purposes of his business, as carried on upon the said land * * * and that he will keep all and singular the said premises in such repair as the same are in at the commencement of said term, or may be put in by the said Lessors during the continuance thereof, reasonable use and wear thereof and damage by fire or other inevitable accident, without the fault, neglect or wrong of said Lessee or his representatives, only excepted; that the said Lessee or others having his estate in the premises will not assign this lease nor underlet the whole or any part of the said premises; nor make or allow to be made any unlawful, improper, or offensive use thereof, nor make any alteration in said premises, during the term aforesaid, without the consent of the said Lessors, or those having their estate in the premises, being first obtained in writing, allowing thereof; and also that it shall be lawful for the said Lessors, or either of them, and for any person duly authorized by them, at all reasonable times to enter into and upon the same, to examine the condition thereof; and further, that the said Lessee and his representatives shall without any further notice or demand of any kind, at the expiration of said term or other determination of this lease, peaceably yield up unto the said Lessors, or those having their estate therein, all and singular the said premises, in as good state and condition, in all respects, as the same are in at the commencement of this lease, reasonable wear, and the use thereof, and damage by fire or other casualties, without the fault, neglect or wrong of the said Lessee excepted. Provided always, and these presents are upon this condition, that if the said Lessee does, or shall neglect punctually to pay the rent, and at the date hereinbefore stipulated, or make any default in the covenants herein contained, then and in any such case, it shall be lawful for the said Lessors, or either of them, and for any person duly authorized by them to enter into and upon the said premises, or any part thereof, in the name of the whole, and repossess the same as of their former estate, and expel the said Lessee and all those claiming under him and remove their effects (forcibly if necessary) without being taken or deemed guilty of any manner of trespass, and without prejudice to any remedies which are authorized by statute.

"And the said Lessee hereby covenants and agrees with and to the said Lessors that as an additional compensation for the use of the land herein demised, all improvements placed by him upon the said land shall remain thereon and become the property of the said Lessor or those having their estate in the premises, upon the termination of this Lease, whether the said Lease terminates by lapse of time or should be cancelled for non compliance with the terms thereof on the part of the party of the second part.

"[Signed]   John S. Kennedy,        L
            "Samuel Thorne,          E
            "Wm. Walter Phelps,      S
                                      S
            "By Ira H. Evans,        O
                                      R
     "Agent and Attorney in Fact.    S

"Witnesses to signature of Ira H. Evans:
    "[Signed]   John W. Armstrong,
                "James A. Caud.
                    "D. S. D. McNeely.
"Witnesses to signature of Lessee:
    "[Signed]   John J. Dollard
                "Jno. W. Armstrong."

By deed dated March 10, 1880, six days before the date of the above lease, but acknowledged more than six months thereafter, on September 17, 1880, Kennedy et al. conveyed the land covered by the lease to Wm. E.

Bond, Edward B. Babcock, and D. McGregor. By regular chain of conveyance the title has vested in defendants.

■ Appellants contend that the lease contract was improperly admitted over their objection, urging, in addition to several objections based upon its legal effect, that it was not acknowledged and that it did not come from proper custody. We think the lease was properly admitted. It was an ancient document; it did come from proper custody; and its genuineness was in no way questioned by plaintiffs.

■ We think the effect of the making of the lease contract by D. S. D. McNeely, his holding of possession thereunder and the succession of Sam Overstreet to his possession had the effect, as a matter of law, of barring plaintiff's right to claim that the possession and use of the land in controversy by Sam Overstreet was adverse to defendants and their predecessors in title.

When McNeely executed the lease, he became, by its terms, the tenant of John S. Kennedy, Samuel Thorne, and Walter Phelps, "and their successors or assigns." And we think it wholly immaterial that the lease is dated some ten days after the date of the deed from Kennedy et al. to Bond et al. There is no showing as to when the deed was delivered. It was acknowledged some six months afterwards. Therefore it is not shown that Kennedy and his associates were not the owners of the land at the time McNeely executed the tenancy agreement. Moreover, since McNeely was in possession, and had been for several years, Kennedy and his co-owners were obligated to procure his attornment if they had not previously done so, in order that they might make delivery of possession to their vendees.

■ As a general rule, a tenant cannot dispute his landlord's title. This rule has been long established and universally admitted. Tyler v. Davis, 61 Tex. 674; West Lmbr. Co. v. Sanders (Tex. Civ. App.) 225 S. W. 828; Richardson v. Houston Oil Co. (Tex. Civ. App.) 176 S. W. 628 (writ refused). It is also settled that all who enter under the tenant occupy the same position as the original tenant and are equally estopped to deny that the possession thus acquired is that of the landowner. Cobb v. Robertson, 99 Tex. 145, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; Flanagan v. Pearson, 61 Tex. 306; Werts' Heirs v. Vick (Tex. Civ. App.) 203 S. W. 63 (writ refused). The landlord's title may not be disputed by one who claims under or through the tenant, either as successor in interest, grantee, assignee, subtenant, agent, or employee. 27 Tex. Jur. p. 76; New York & Texas Land Co. v. Dooley, 33 Tex. Civ. App. 636, 77 S. W. 1030 (writ refused); Emporia Lmbr. Co. v. Tucker, 103 Tex. 547, 131 S. W. 408.

■ Appellants insist that, even admitting that McNeely held under the lease, such fact could in no wise affect the position of Sam Overstreet, for the reasons, among others, that (a) the lease was for one year only, and by its terms expired in 1880, twelve years before Overstreet's possession began, and (b) that the record fails to show that Overstreet took or held under the lease or even knew of its existence. As to the first contention, we think it wholly immaterial that the lease was for one year. By execution of the lease agreement and possession thereunder, the status of McNeely was fixed as that of a tenant of Kennedy et al. and their vendees, and such continued to be his status so long as he continued the possession, in the absence of a repudiation brought home to his landlord. When a tenant holds over after the expiration of the term of his lease with the tacit consent of the landlord, the law implies an agreement on the part of the landlord that he will let, and on the part of the tenant that he will hold, on the terms of the expired lease. City of San Antonio v. French, 80 Tex. 575, 16 S. W. 440, 26 Am. St. Rep. 763. The landlord may elect to treat him as a tenant from year to year and in all other respects as holding upon the terms of the original lease, or as a trespasser. The tenant, however, has no such right of election as belongs to the landlord. Tiffany, Landlord and Tenant, vol. 2, § 209, p. 1470. And the mere fact that a tenant remains in possession after the expiration of his term without any express repudiation of the relation created by his lease is insufficient to show that he holds adversely to his landlord, even though he may secretly intend to do so. Carson v. Broady, 56 Neb. 648, 77 N. W. 80, 71 Am. St. Rep. 691.

■■ Nor do we think it material that the record fails to show that Overstreet knew of the existence of the lease or that he took and held under it. The essential fact is that the possession which Overstreet acquired was that of McNeely, the tenant. The possession was continuous from the time it began until Overstreet abandoned it in 1904. In the eyes of the law, the character of the possession was the same under Overstreet as it had been under McNeely. There was privity of possession between them, and a constructive tenancy attached to Overstreet's possession whether he knew of the existence of the lease agreement or not. Buford et al. v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275. And Overstreet could no more hold adversely to the landlords without bringing home to them repudiation of the tenancy than McNeely could have. Dietzman v. Sayles (Tex. Civ. App.) 245 S. W. 773.

■ Appellants make the further contention that, even if it be conceded that the relation of landlord and tenant was created between McNeely and the record owners of

the land by the execution of the lease contract, such relation was repudiated both by McNeely during the time of his possession and later by Overstreet. As to McNeely, the appellants say that he cleared up land and also sublet and made an assignment of the lease in violation of its terms. As to Overstreet, it is shown that shortly after taking possession of the field he built a small tool house in the corner of it, which he used to store implements in in connection with his cultivation of the field. One witness also testified that Sam Overstreet enlarged the field by clearing up a half or three-quarters of an acre.

We think the facts wholly insufficient to show any repudiation of the tenancy relationship. The lease, by its terms, simply forbids the lessee to cut, or permit to be cut, any timber on the land "in excess of what may be required by him for the uses and purposes of his business as carried on upon said land," and that he will not assign the lease or underlet it or allow to be made any unlawful use of the property, or to make any alteration in the premises without the consent of the lessors or those having their estate in the premises. Conceding that the acts committed by McNeely and Overstreet, and relied upon to show repudiation of the tenancy relationship, constituted a breach of the terms of the lease, in the absence of consent given in writing by the landlords there is no specific showing that such consent was not given. Nor can such fact be supplied by presumption. Since McNeely and Overstreet were tenants, the presumption, if one is to be indulged, would be that they acted in accordance with their agreement and not in violation of it. Moreover, the burden was upon the plaintiffs to show a repudiation of the tenancy in order to support their plea of limitation.

While a tenant may set up a claim adverse to his landlord, yet to do so it is necessary for him to renounce holding as a tenant and to set up and assert an exclusive right in himself, and further it is essential that the landlord should have actual notice of the tenant's claim, or the tenant's acts of ownership must be of such open, notorious, and hostile character that the landlord must have known of it. 1 R. C. L. 747.

There is no evidence in the record that McNeely ever set up any claim in himself, nor does the record show any acts upon the part of Sam Overstreet which amount to a repudiation of the tenancy relationship. On the contrary, the record shows that from 1904, when he abandoned his possession of the land in controversy, until the time of his death in 1927—twenty-three years—he lived on the McNeely tract, which adjoins the land in controversy, and yet there is no showing that during that time he ever attempted to make any use of the land in controversy, ever paid taxes on it, or in any way exercised, or attempted to exercise, any acts of ownership over it. This fact alone tends strongly to rebut any inference that might arise from his cultivation of the land between 1893 and 1904 that his holding of it was adverse to that of the owners.

We think the trial court properly instructed the verdict for the defendants, and the judgment is affirmed.