**BALLINGALL et vir. v. BROWN et al.**
No. 15087.

Court of Civil Appeals of Texas.
Fort Worth.

Dec. 2, 1949.

Rehearing Denied Jan. 20, 1950.

166

SPEER, Justice.

Plaintiffs, Albert Brown; William Fishbein; Janet Fishbein; a minor, acting through a next friend; Dorothy Fishbein Wall, joined by her husband; and Dan Brown, instituted this suit on July 9, 1948, in statutory form of trespass to try title against defendants, Della Ballingall and her husband, to recover title and possession of about 12 acres of land in the Trinity River "botton," inside the corporate limits of the City of Fort Worth. Parts of the land have been platted into lots and blocks and are thus described, while about half has not been platted and is described in the petition by metes and bounds.

Defendants answered with a plea of not guilty and a claim of title under the ten year statute of limitation by themselves and those under whom they hold and claim.

For a quick understanding of some of the complicated issues before us, it is certain that Mrs. L. A. Peterson, formerly Mrs. Alice Reeves, was a widow during the times material here; that in 1944 she died at an advanced age, after being bedridden for a year or more with cancer. Her age at the time of her death was only estimated but it is revealed that she had a great grandson 17 years of age; she left a will bequeathing her property to an invalid widowed daughter, who died of tuberculosis without issue early in 1948; the daughter lived with Mrs. Peterson on the involved property and remained there until her death. Aside from the invalid daughter, Mrs. Peterson left surviving her five other sons and daughters. After the death of the single daughter, two sons and two daughters, all adults, conveyed their respective interests to the other daughter, Mrs. Della Ballingall and she and her husband are the defendants in this suit.

Trial to a jury on special issues resulted in a verdict favorable to defendants, but upon motion by plaintiffs the court entered judgment non obstante veredicto for them, from which defendants have appealed.

A. C. Heath; Clark, Craik, Burns & Weddell, and Chester Clark, all of Fort Worth, for appellant.

Simon & Simon and Henry W. Simon, all of Fort Worth, for appellee.

Appellants' (defendants below) first point of error contains more than a page

168

of purported evidentiary matters and arguments, concluding with this language: "The trial court erred in overruling the defendants' motion for judgment and in sustaining the plaintiffs' motion for judgment notwithstanding the findings of the jury to the contrary."

We think the quoted portion of the point of error presents the controlling factor in this appeal. Before the cause was submitted to the jury the court refused to submit appellees' requested peremptory instruction. After the verdict was returned, the appropriate motion by appellees for judgment non obstante veredicto was filed and considered by the court and some days later the motion was sustained and the judgment for appellees was entered, in which the court found substantially that there was no issue of fact raised by the testimony and that the peremptory instruction requested by appellees should have been given. If the court was correct that the instructed verdict should have been given, it was proper to enter the judgment non obstante veredicto (Rule 301, Texas Rules of Civil Procedure), otherwise it was error.

The testimony in this case, like most cases of its kind, is lengthy. It seems that in 1907 Mrs. Peterson and her family were required to move from a dairy farm when it was sold out and in an effort to help her a neighbor told her of an old vacant house, sometimes referred to as a shack, in the river bottom and advised her to move into it until she could find something better; neither she nor her friend knew who owned the property. The old house was on a part of about 40 acres enclosed by a barbed wire fence, which enclosure also included the 11 or 12 acres here in controversy, but the house was not on the land involved. No one seems to know who owned the remainder of the enclosure, nor is it important here. Mrs. Peterson continued to remain in the house and for many years had cultivated parts of the land and pastured the reminder up to the time of her death in 1944. There is testimony from five or six persons who said that Mrs. Peterson at various times told them she owned the property, the precise time she began asserting ownership is not shown; as we shall later point out, uses, occupancy and claim of ownership prior to 1928 become immaterial.

Counsel for both sides stipulated many matters which were conclusively shown by the testimony in order to shorten the statement of facts; this commendable gesture by all parties has materially lessened our labors.

The material stipulations are in effect that: Appellees (plaintiffs) established in themselves a regular chain of title from the sovereignty of the soil to all lands in controversy, except Lot No. 9 (less than one acre), Grainger's Third Addition; as to said Lot No. 9 appellees established a complete chain of title down to J. F. Ellis in 1886 but no conveyance out of Ellis; there is a complete chain of title to said Lot No. 9 beginning with the deed of Wilson to Key in 1890 to appellees; appellants' possession began subsequent to 1890. During the years 1913 and 1919 appellees' predecessors in title recovered judgment against Mrs. L. A. Peterson for title to the land (separate parts in those two suits covered all), and in 1919 Mrs. Peterson conveyed all her rights in the property to appellees' predecessors in title. In 1923 Dan and I. Brown, the former a plaintiff in this suit and the latter a predecessor in title of the other plaintiffs, recovered judgment against Mrs. Peterson for title to all the land in question and had their order for writ of possession. Notwithstanding all of said judgments and conveyances so stipulated, Mrs. Peterson continued to remain on the premises and to cultivate and use the part here in controversy the same as she had done previously in connection with the approximately 30 acres enclosed, which remainder, for all this record shows, she may own by prescriptive rights.

It is quite clear to us that appellants cannot claim title by limitation by virtue of any uses, occupancy or claims of ownership by Mrs. Peterson between the date of her entry in 1907 and 1923, because between those dates the court had decreed the title to each of the appellees and to their predecessors in title as against Mrs. Peterson. Moreover, Mrs. Peterson had

during that time quitclaimed her rights to them.

As best we can gather from the testimony, only one witness, a Mr. Pannill, stated that Mrs. Peterson ever claimed to own the land after 1928, when she leased it from appellees, which fact we shall notice later. Mr. Pannill was sued along with Mrs. Peterson for title and possession in 1940. Other witnesses either fixed the time they heard Mrs. Peterson claim ownership prior to 1928 or left a fair inference that it was before that year. Several witnesses said the general reputation in the neighborhood was that Mrs. Peterson owned the land but, like her declarations of ownership, they were indefinite as to the time.

If Mrs. Peterson and appellants ever ripened their prescriptive rights into title, it must have been subsequent to March 24, 1928. On that date appellee Dan Brown and I. Brown, a predecessor in title to the other appellees, entered into a written lease contract with Mrs. Peterson for the identical land here involved. By the terms of that instrument the lessee obliged herself to pay to lessors rentals of one-eighth of the corn and other crops produced on the land, to keep in repair the fences, to prevent waste, etc., and to "erect fences on the true boundary lines of lessors' lands and to keep same in good state of repair during the continuance of this lease."

It is unnecessary to cite all the authorities which in effect hold that a lessee or tenant may not begin a prescriptive right as against the lessor and claim title by limitation until such tenant establishes as a fact that he has repudiated the owner's title and commenced the assertion of an open and notorious claim to the land and had brought home to the lessor actual or constructive notice of such repudiation of the owner's title and the commencement of the assertion of an adverse claim to the land. Overstreet v. Houston Oil Co., Tex. Civ.App., 64 S.W.2d 354, writ ref.; Doherty v. Jensen, Tex.Civ.App., 174 S.W.2d 77, affirmed on this point by the Supreme Court in 143 Tex. 64, 183 S.W.2d 453, 457.

In the case of Doherty v. Jensen, Tex.Civ.App., 174 S.W.2d 77, supra, the court announced a rule which we think applicable to the issue before us. The substance of the rule so announced is: If a party's original entry is followed by open and notorious occupancy in such manner as to give the owner notice that the occupant has begun a period, which if continued, would ripen into a prescriptive title, but the occupant thereafter recognizes the owner's title (the lease contract in the instant case), the continuation of the same character of occupancy, use and possession is not of itself sufficient to raise the issue of a repudiation by the occupant of the owner's title and that there had been a change from a friendly to a hostile claim since the recognition by the occupant of the owner's title. On review the Supreme Court approved the rule so announced. 183 S.W.2d 453, 457 [par. 7].

It is provided by Article 5237, R.C.S., that a tenant may not sublet or rent the leased premises without the consent of the landlord, his agent or attorney.

In 1940 by some kind of a lease or other arrangement with Mrs. Peterson, a Mr. Pannill, who testified as a witness in this case, moved a house trailer onto a part of the land involved and planted a few acres in corn and garden truck. During that year appellees instituted suit against Mrs. Peterson and Pannill in trespass to try title, alleging ouster of plaintiffs in that suit on January 1, 1938, and sought title, possession and unpaid rentals. At the instance of the attorneys for plaintiffs in that suit, who are appellees in this cause, a son of Mrs. Peterson procured a disclaimer from Pannill, the sub-tenant, and he moved off the premises, and the attorneys representing the plaintiffs in that suit told the son they would not further prosecute the suit against his mother, but that she could remain in possession under her lease contract. The case was dismissed four or five years later for want of prosecution. Mrs. Peterson, as she had done in previous years, just remained in possession until her death about Christmas in 1944. There is nothing in the record to indicate that the character of her subsequent occupancy, use and possession was any different to what it had been theretofore, including the time

when she entered into the lease contract. It is true she did not pay any rentals as provided in the lease, but she had never paid any prior to that date, nor does it appear that any were ever demanded of her at any time. She made some repairs on fences but she contracted in the lease to do this.

■■ It will be borne in mind that the old house occupied by Mrs. Peterson was on a part of the 40 acre enclosure but not on any part of the land here involved; she made some repairs on the house and it is argued by appellant that such repairs constituted some evidence of a claim of ownership by her of the 12 acres enclosed with the remaining 30 acres. Such a conclusion does not necessarily follow, since if she owned the 30 acres either by deed or by prescription, it would not be construed as a permanent improvement on some other person's land which she had enclosed with her own. Again, it is argued that when appellees filed a suit in trespass to try title against Mrs. Peterson and Pannill in 1940 and she answered with a plea of limitation appellees must have known she had repudiated her lease contract with them. Even if such contention be sound, the ten year period did not run between that date and filing of the instant suit. There is no merit in appellants' contention that because the suit in 1940 alleged ejection in 1938 the limitation period began to run in 1938. Trespass to try title is applicable to other situations than mere trial of title; such as removal of a cloud on title, and if the pleadings in such actions substantially comply with statutory requirements they are sufficient to support a judgment; and further, if the purpose be revealed by the pleadings, the allegation of ejection and unlawful withholding possession need not be proved. Rains v. Wheeler, 76 Tex. 390, 13 S.W. 324. The answer of "not guilty" eliminates the necessity of proof of ouster. 41 Tex.Jur., p. 466, sec. 12. See also Rule 790, Texas Rules Civil Procedure.

■ The action may be invoked by the seller of land as against a purchaser who has not paid the purchase money when due. Janes v. Stratton, Tex.Civ.App., 203 S.W. 386; 41 Tex.Jur., p. 475, sec. 19. The statutory action will lie in cases in which forcible entry and detainer may be maintained. 41 Tex.Jur., p. 468, sec. 13.

The record before us clearly shows that the allegation of ejectment in the 1940 suit was one to collect rentals not then barred by limitation but that when the sub-tenant disclaimed and moved off the premises plaintiffs declined to further prosecute the suit against Mrs. Peterson but agreed for her to continue in possession under her lease contract, although she had never paid any rents. She did continue in possession under the circumstances and plaintiffs were thus warranted in believing she was doing so under the lease as stated by plaintiffs to her son, who represented her in the transaction.

■ The invalid daughter continued to live on the premises between three and four years after Mrs. Peterson died. There is no evidence that she made any other claim or character of ownership than that she had taken from her mother under the will. The daughter took whatever right her mother had and no more. She could no more dispute the title of appellees, who were her mother's lessors, than her mother could have done. 27 Tex.Jur., p. 76, sec. 23; New York & Texas Land Co. v. Dooley, 33 Tex.Civ.App., 77 S.W. 1030, writ ref.; Overstreet v. Houston Oil Co., Tex. Civ.App., 64 S.W.2d 354, writ ref. Appellants here admittedly claim only such rights as her mother, Mrs. Peterson, and her deceased sister had.

■ We find no evidence in the record tending to show that Mrs. Peterson ever at any time repudiated the title of her lessors, the appellees, nor that she ever brought home to them actual or constructive notice of "a clear, positive and distinct repudiation" of her tenancy under them; in the absence of which she and those claiming under her could not acquire title by limitation. Houk v. Kirby Petroleum Co., Tex. Com.App., 65 S.W.2d 496; Warren v. Haverkorn, Tex.Civ.App., 191 S.W.2d 793, 794, and cases there collated. Under authority of such cases as those cited, we overrule the first point of error.

Second point claims error in the award of title to Lot No. 9, Grainger's Third Ad-

dition to the City of Fort Worth to the appellees when they had not shown a complete chain of title in them.

The stipulated facts above mentioned by us show that appellees' chain of title was complete down to Ellis, who held under a deed dated in 1886 and there was no deed of record from Ellis. The next conveyance was from Wilson to Key, dated January 14, 1890, and that appellees' chain of title was complete from Key; the missing link was between 1886 and 1890. This was fifty-eight to sixty-two years prior to the institution of this suit. For this length of time appellees and their predecessors in title have held a complete chain of title, paid all taxes thereon and have been entitled to possession. There is nothing in the record to indicate that any one claimed the lot adversely to them. It was further stipulated that such claims as appellants had under their predecessors in title by virtue of limitation began to run subsequent to 1890.

■■■ When, as in the instant case, a party does not plead the specific elements of his title, he may prove title by any other competent evidence, including circumstances. 41 Tex.Jur., p. 558, sec. 78. It has been held that where the plaintiff shows priority of possession, as in this case, by deeds to Lot No. 9 since 1890, and no title is shown in defendant, plaintiff is entitled to judgment by virtue of such possession. Payton v. Loustalott, Tex.Com. App., 53 S.W.2d 1012; Lockett v. Glen, Tex.Sup., 65 S.W. 482; Bankston v. Fagan, Tex.Civ.App., 64 S.W.2d 820. Likewise, as in this case, where there is a missing link in the chain of title many years prior to the time such issue is raised, there is a presumption liberally indulged that a deed did exist covering the period. 14 Tex. Jur., p. 783, sec. 30. The cases indicate that the above announced rule has been applied in varying periods of years. Frugia v. Trueheart, 48 Tex.Civ.App., 106 S. W. 736, writ ref.; Brewer v. Chochran, 45 Tex.Civ.App., 179, 99 S.W. 1033, writ ref.

■■■ Appellees are not dependent solely upon an application of the foregoing principles. It was stipulated that in 1919

Mrs. Peterson, joined by her husband, conveyed Lot No. 9, Grainger's Third Addition to Kitchen and in the same year Kitchen and the Petersons quitclaimed the lot in appellees' predecessors in title. And in addition to all this appellees and their predecessors in title recovered judgments against Mrs. Peterson for said title prior to 1923. It requires no citation of authorities to show that this matter became res judicata. Then too, since appellants claim under such title as Mrs. Peterson acquired, she, for the purpose of this issue, became the common source of title between appellees and appellants, and appellees having acquired from Mrs. Peterson any title she may have had in 1919 and 1923 appellants acquired no title from her accruing prior thereto. The second point is overruled.

■■■ Third and last point of error complains of the court's admitting over appellants' objection, testimony by one of appellees' counsel "that he told Pat Reeves that if he would secure a disclaimer from Pannill (one of the defendants in a prior suit) that Mrs. Peterson could remain (on the land) under her lease agreement."

We have previously referred to this testimony in discussing the first point but to properly understand the point now before us requires more details than we have previously mentioned. Subsequent to the lease contract in 1928 appellees learned that a Mr. Pannill was occupying a part of the land claimed by them, and in 1940 filed a suit in trespass to try title against him and Mrs. Peterson. The attorney who filed that suit testified that Pat Reeves, a son of Mrs. Peterson, as her representative and who was also a brother of appellant Mrs. Ballingall, under whom she claims in part, came to the attorney-witness and said that he did not think Pannill claimed any title to the land, and that he would procure from Pannill a disclaimer. Witness told Reeves that if he would get the disclaimer his clients (the appellees in this case) would not dispossess his mother but would permit her to remain on the premises under the lease contract. Appellants' counsel objected to the testimony upon the ground that it "was hearsay, immaterial and not proving title." We think the testimony

was admissible under the particular circumstances of this case. Of course the testimony did not directly tend to prove appellees' title but it did have the effect to substantiate certain of their contentions, in that they knew Pannill had no rights on the land coming from them; they knew they had a written lease to Mrs. Peterson, and upon that theory they were warranted in assuming that she was holding possession under the lease. They perhaps knew something of her age and afflictions and their dealings at that time were with an adult son who assumed to act for his mother in these things. Subsequent events strongly indicate that all parties acted upon the result of the transactions now complained of. This for the reason that Reeves did procure the disclaimer from Pannill; Pannill did move off the place; Mrs. Peterson did remain on the premises, and appellees did abandon their suit against Mrs. Peterson.

Our final conclusions are that no reversible error is presented; that the assignments should be and are overruled and that the judgment should be affirmed. It is so ordered.