**HOUK et al. v. KIRBY PETROLEUM CO.**

**No. 1693—6307.**

Commission of Appeals of Texas, Section A.

Nov. 28, 1933.

A. J. DeLange and A. D. Dyess, both of Houston, and E. B. Pickett, Jr., of Liberty, for plaintiffs in error.

P. F. Graves, of Houston, for defendant in error.

SHARP, Judge.

R. W. Houk and others brought suit against Kirby Petroleum Company to recover title and possession of a 5-acre tract of land, part of the Henry Griffith survey, in Chambers county. Plaintiffs' petition is in the usual form for an action of trespass to try title. The defendant, Kirby Petroleum Company, answered by general demurrer, general denial, and plea of not guilty, and especially pleaded limitation of three, five, ten, and twenty-five years. The cause was submitted to a jury upon special issues, and based upon their findings, the trial court entered judgment in favor of the plaintiffs. The case was appealed to the Court of Civil Appeals at Gal-

veston and by a divided court the judgment of the trial court was reversed and judgment rendered in favor of the Kirby Petroleum Company. 51 S.W.(2d) 416, 421. We refer to the majority and dissenting opinions for a more detailed statement of the nature and result of the case. The Supreme Court granted a writ of error to review the opinion of the Court of Civil Appeals.

Plaintiffs in error, in substance, contend: (1) A party in possession of land, who attorns to the owner, and all persons holding under him, however remote, are estopped from claiming the title by limitation, because the possession of such occupant is not adverse to the true owner, unless and until the tenancy relationship is openly, distinctively, and positively repudiated and notice of such repudiation brought home to the owner of the land. (2) The possession of one who takes possession from a tenant is the possession of the landowner, and such possession cannot be held to be adverse to the landowner, unless and until the tenancy relationship is expressly repudiated or such a different use made of the land as to be inconsistent to the landlord's title.

Associate Justice Lane, in his dissenting opinion, has made a fair statement and summary of the evidence pertinent to the issues involved here, and we quote therefrom as follows:

"(1) The undisputed evidence shows that defendants in error were the record owners of the land sued for in this cause; (2) that the only title to such land asserted by plaintiff in error is a limitation title under the five years' statute of limitations; (3) that Dr. Collier, president and general manager of the affairs of the Old River Company, a corporation, leased from D. J. Lawrence under whom defendants in error hold 350 acres of land which includes the land sued for, in the year 1912; that he (Dr. Collier) in the latter part of the year 1912 or the first part of 1913, put J. W. Smith and Charles Fannette on the premises to farm the land, a part of which was farmed and a part used for pasture purposes. Later, in 1915, Dr. Sheffield as a tenant under the Old River Company, moved upon the premises and farmed parts of the land not theretofore farmed under the Old River lease; that while Dr. Sheffield was living on the land he built a garage next to the public road; that he had a negro house on a part of the land but not on the tract claimed by defendants in error. There was no evidence showing that any change was made in the use of the 5 acres sued for while it was under lease to the Old River Company; it was not shown that any fence or other structure was placed on said 5-acre tract while under such lease. Dr. Collier testified that up to the time the Old River Company conveyed to the plaintiff in error, Kirby Petroleum Company, in December, 1923, there was no notice given of any adverse claim to the 5 acres claimed by defendants in error. He said: 'As to whether there was any claim of adverse ownership to those interests, to the * * * 5 acres, asserted by anybody that I know of during that time, I will say that Mr. Houk came to my office and brought me a deed some time in 1923.' He said that this occurred before the conveyance of the property was made by the Old River Company to Kirby Petroleum Company by the deed of December 6, 1923; that Mr. Houk told him that he had a 5-acre tract out of the Lawrence home tract; that Houk showed him the deed and left it with him; that such deed had been recorded; that Houk told him that if we had such 5 acres inclosed, he would like to have a tenant at will agreement from the Old River Company; that he told Houk that they did have it inclosed; that when Houk so told him he told Houk that he would not claim limitation against anybody.

"Testifying further, Dr. Collier said: 'Following the conveyance of this land by Old River Company to Kirby Petroleum Company, for two years I acted as agent of the Kirby Petroleum Company.'

"Again he said: 'I know I handled those lands for the Kirby Petroleum Company in 1924 and 1925 and W. D. Smith followed me there; it must have been in 1926.'

"Again he said: 'I became president of the Old River Company about 1910, I think, and remained president until it dissolved or went out of business. It ceased doing business, dissolved, or became defunct, or whatever happened to it in 1923. This deed was made in December, 1923; that was the end of the Company. That was part of the winding up of it; that was the final winding up. I was president of it practically all of that time, from 1920 until it dissolved or ceased doing business. I was a substantial stockholder; in fact, I guess I had a majority of the stock. I could not tell you, off-hand, what stock I had in it, but I had more than fifty per cent. In a way, that made me boss; in other words, if anybody talked about the Old River Company down there, they usually meant Dr. Collier, whether they had something good or bad to say; I was pretty well identified with the Old River Company. I was identified in that neighborhood as the representative in control of the affairs of that Company, both as manager, stockholder, and as president.'

"Testifying further, he said: 'Now, back to my expression when I was discussing it with Mr. Houk, that I told him that I had never, personally, made a claim to land by limitation and would not. Evidently I meant that to apply to this five-acre tract, that remark; that is what we were talking about. In other words, Mr. Houk was not alarmed about anything else; he was hunting me up to know whether or not his five acres was in

danger; he came to my office and started a conversation about this identical five acres, and in that conversation, when I said I had never claimed any land personally, I certainly meant that I had not claimed this five acres. If I meant by that remark to keep it from applying to me in my capacity as president of the Old River Company, nobody could have made an adverse claim for that Company except me; that Old River head was my head and my head was the Old River head; the directors were concerned, too, but as far as the Old River Company was concerned, I was the Old River Company, and if that inanimate thing we call the Old River Company had a mental attitude that made it a claimant to this land, I would be aware of it. Nothing occurred that indicated that the Old River Company's attitude with reference to this claim was different from what I said my personal attitude was; there has been nothing occurred because I just put the deed away and forgot about it. I was the president of the Old River Company. Mr. Houk did not discuss with me this proposition and this apparent use of a part of this land in my capacity as president of the Company as well as personally; he never mentioned it as president of the Company. I am sure that he knew I was president of the Company. I am the man that he would have gone to to find out about an affair of this kind. I said before that such an affair as this was a matter that was in my control except where the directors would overrule me, but they never overruled me on this matter, not even to this day.'

"R. W. Houk, one of the plaintiffs, defendants in error here, testified as follows: 'I told Dr. Collier that I understood that the Old River Company was using our five acres, and I showed him the deed to the five acres, and I said: "We have no objection to the Old River Company using it any way they desire, as long as they do not claim it adversely to us," and he said, "No; we have never claimed by limitation." He said: "I have never claimed by limitation." I told him who the owners were and he said: "Especially I would never claim anything against my friend Wheeles." Then I asked him if he would give me a written memorandum to that effect; he said he would if I would leave my deed with him, so he could get the description.' Testifying further, he said that Dr. Collier told him that the Old River Company would not claim said 5 acres adversely to the plaintiffs.

"J. S. Wheless, one of the owners of the 5-acre tract, and one of the plaintiffs, testified that Dr. Collier told him in the year 1920 that the Old River Company would not claim said 5 acres adversely to the plaintiffs."

The following are the special issues submitted by the trial court to the jury and their answers thereto:

"Question No. 1. Did D. J. Lawrence ever claim as his own the five-acre tract of land in controversy after he executed the deed of date January 16, 1905, whereby he conveyed to R. W. Houk said tract of land? (Answer 'Yes' or 'No,' as you find the fact to be.) Answer: 'No.'

"Question No. 2. If you answer 'No' to the foregoing question, then you need not answer the next succeeding question No. 2, but if you answered 'Yes' to said question No. 1, and only in that event, then answer the following question: During what period of time did D. J. Lawrence claim as his own the said five-acre tract of land? (In answering this question, you will give the date when such claim, if any, began and when it ended.) Answer: 'Not answered.'

"Question No. 3. Did George W. Collier, on the occasion of Houk's visit to his office, say substantially to Houk that he (George W. Collier) and the Old River Company had not claimed and would not claim by limitation the said five-acre tract of land? (Answer 'Yes' or 'No,' as you find the fact to be.) Answer: 'Yes.'

"Question No. 4. Did R. W. Houk, on the same occasion, say substantially to George W. Collier that it would be agreeable to Houk for the Old River Company to continue to use the said five-acre tract of land if said company would not claim the land, and did George W. Collier, upon that occasion, agree to act in accord with that understanding and say that he would send Mr. Houk a written memorandum or statement to that effect? (Answer 'Yes' or 'No,' as you find the fact to be.) Answer: 'Yes.'

"If you have answered 'Yes' to either special issues No. 3 or 4, and only in that event, you will answer the following:

"Question No. 5. Did the conversation referred to in the preceding questions Nos. 3 and 4, between Mr. Houk and Dr. Collier, occur in 1921 or 1923? (Answer by naming the year.) Answer: '1921.' "

Article 5515, R. S. 1925, defines "adverse possession" as follows: " 'Adverse possession' is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."

In 2 Corpus Juris, p. 75, § 57, in discussing what is meant by the term "adverse possession" it is said: " * * * In order to make good a claim of title by adverse holding the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, and notorious as to raise the presumption of notice

to the world that the right of the true owner is invaded intentionally and with a purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault. 'The claimant must exercise such acts of ownership and occupancy as are sufficient to "hoist his flag" over the lands, so that all may observe it.'" See collation of authorities in support of this text in the footnotes. See, also, Houston Oil Co. v. Jones, 109 Tex. 89, 198 S. W. 290.

■ The decisive question presented here is: Did the Kirby Petroleum Company acquire title to this land by the 5-year statute of limitation? Could the Kirby Petroleum Company get possession of this land through the Old River Company, a tenant of Houk, and without a clear, positive, and distinct repudiation of this tenancy brought to the knowledge of Houk, acquire the title thereto by limitation? The courts of this state have frequently passed upon this question, and the rule is firmly established that where the relation of landlord and tenant is once established, it attaches to all who may succeed the tenant until a positive repudiation of the tenancy is brought to the knowledge of the landlord. In the case of Flanagan v. Pearson, 61 Tex. 305, the general rule upon this question is announced as follows: "* * * A mere disclaimer of the landlord's title and attorning to another does not operate as a disseizin of the landlord, unless he elects so to consider it, as he may do. [Citing authorities.] An adverse possession, continued for the time limited by statute, becomes a title; but before a tenant can begin to acquire any prescriptive right, he must repudiate his tenancy and give his landlord notice thereof. [Citing authorities.] Even after he has acquired a hostile title he cannot, as a general rule, set it up against his landlord until he has first restored him to possession. [Citing authorities.]"

The foregoing rule has been repeatedly affirmed, and applied in many instances. Many cases could be cited, but the following will be sufficient for the purposes of this opinion: Benskin v. Barksdale (Tex. Com. App.) 246 S. W. 360; Word v. Drouthett, 44 Tex. 365; Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030; Texas & N. O. Ry. Co. v. Speights, 94 Tex. 350, 60 S. W. 659; Burrell v. Adams, 104 Tex. 183, 135 S. W. 1156; Casey v. Hanrick, 69 Tex. 44, 6 S. W. 405; Cobb v. Robertson, 99 Tex. 138, 86 S. W. 746, 87 S. W. 1148, 122 Am. St. Rep. 609; Tyler v. Davis, 61 Tex. 674; Werts' Heirs v. Vick (Tex. Civ. App.) 203 S. W. 63; Whiting v. Edmunds, 94 N. Y. 309.

It is contended that the nature of the apparent holding of the Old River Company at the time of its conveyance in December, 1923, to the Kirby Petroleum Company distinguishes it from the general rule announced by the decisions upon this question. It is claimed that the Old River Company went into possession under a title traceable to the agreed common source and that it acquired possession, not as a tenant nor under a tenant. It is also claimed that the title under which it held was of record and the so-called tenancy relationship was a secret arrangement, purely verbal, and never disclosed to any one other than Dr. Collier and Houk; that the Kirby Petroleum Company had no actual knowledge of the tenancy relationship, and the record is devoid of facts that would charge that company with notice of tenancy relationship made between Collier and Houk.

■■ The jury found that D. J. Lawrence by deed dated January 16, 1905, conveyed this 5-acre tract of land to Houk and that Lawrence never afterwards claimed this land. This deed was duly recorded on September 6, 1909. It further found that the Old River Company had not claimed, and would not claim, by limitation the land in controversy and that the Old River Company could continue to use the land if no claim of limitation was to be made. This was the status of things when the Old River Company in December, 1923, executed its deed to the Kirby Petroleum Company. At that time Dr. Collier was the agent of the Old River Company and continued as the agent for Kirby Petroleum Company for two years thereafter. Thus, we find that the Old River Company was occupying this land as a tenant of Houk at the time it made its deed in 1923 to the Kirby Petroleum Company. The law of this state exacts from tenants the exercise of the utmost good faith in carrying out the tenancy relationship when once established. This rule also applies to persons acquiring title and possession whether by inheritance or by purchase from the tenant. Nothing short of an open, positive, and visible repudiation of that trust will suffice to start the running of the statute of limitation. Because Kirby Petroleum Company had no notice of the agreement between Houk and Collier under the facts here stated, will not be sufficient to take the case from under the well-established rule and set the statute in motion in its favor. The courts of this state, as well as the courts of other jurisdictions, have not drawn any fine distinctions upon this question. They rest their decisions upon the broad ground that where the relation of tenant and landlord is once established, it takes a plain, positive, and clear-cut repudiation to break that relationship, and until that is done, the tenant is estopped to deny the title of the owner. Benskin v. Barksdale, supra; Buford v. Wasson, 49 Tex. Civ. App. 454, 109 S. W. 275, 278 (writ denied); Mattfeld v.

Huntington, 17 Tex. Civ. App. 716, 43 S. W. 53 (writ denied); Udell v. Peak, 70 Tex. 551, 7 S. W. 786; 2 C. J. page 134.

The Old River Company was the tenant of Houk in 1923 when it conveyed this land to the Kirby Petroleum Company, and Dr. Collier, who was the agent at that time for that company, continued as the agent of the Kirby Petroleum Company for two years thereafter. This suit was filed October 25, 1929, and there is no proof in this record which shows that the Kirby Petroleum Company gave Houk notice that it was claiming adverse title and possession of this land for a period of five years in such manner as required by law to permit it to acquire title to same as against Houk and the others. The majority opinion of the Court of Civil Appeals reversing and rendering this cause is erroneous.

We therefore recommend that the judgment of the Court of Civil Appeals be reversed and that the judgment of the trial court be affirmed.

CURETON, Chief Justice.

Judgment of the Court of Civil Appeals is reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.