**ANGELINA COUNTY LUMBER CO.**

v.

**REINHARDT et ux.**

No. 4955.

Court of Civil Appeals of Texas.

Beaumont.

May 27, 1954.

Collins, Garrison, Renfrow & Zeleskey, Lufkin, for appellant.

Ross Hightower, V. A. Collins, Livingston, for appellees.

### R. L. MURRAY, Chief Justice.

This is a suit in trespass to try title, brought by appellees, Julius Reinhardt and wife, against appellant Angelina County Lumber Company, to recover a tract of 29.-29 acres of land in Polk County. Appellees in their petition affirmatively pleaded the ten-year statute of limitation as the basis of their title. Appellant answered the suit by plea of not guilty and filed cross action for title.

The case was tried to a jury and upon the jury's verdict in favor of the appellees, the court rendered judgment for appellees for title and possession. Appellant has duly perfected its appeal.

The appellant is the record owner of the 29.29 acre tract of land in dispute and holds title under deeds from Mardez Lumber Company to Lynch Davidson & Company, from the Receiver of Lynch Davidson & Company, Lynch Davidson & Company and Lynch Davidson, individually, to Angelina County Lumber Company, from Angelina County Lumber Company to Southland Paper Mills, Inc., from Southland Paper Mills, Inc. to Angelina County Lumber Company. During the course of the trial the parties stipulated that record title is in the appellant.

On and prior to December 13, 1916, Mardez Lumber Company was the owner of the tract of land in litigation here. Also on and prior to December 13, 1916 C. C. Vinson, also referred to in the testimony as Charlie Vinson, was the owner of two tracts of land which adjoined the land in dispute. On December 13, 1916 C. C. Vinson and his wife, Luella Vinson, executed a lease contract with Mardez Lumber Company and in such written contract the land in dispute was leased by Mardez Lumber Company to C. C. Vinson and wife for a period of five years, with the Vinsons having an option to renew the lease for an additional five year period. This lease was recorded in Polk County on December 27, 1916. It was offered in evidence by the appellant but was excluded by the court upon the objection of the appellees. This action of the trial court is the basis of appellant's Point No. 1 on appeal. This instrument is referred to by both parties in their briefs as the "Vinson Tenancy Agreement" and it will be so referred to here.

The Vinson tenancy agreement recited a cash consideration of $1 "and the further considerations of a certain lease and right-of-way privilege granted by C. C. Vinson and wife, Luella Vinson, to the Mardez Lumber Company, the terms of which are more fully expressed in said lease, which is of the same date as this lease." The appellant of-

fered in evidence the right-of-way lease from C. C. Vinson and wife to the Mardez Lumber Company whereby Vinson and wife leased to the Mardez Lumber Company a right-of-way 30 feet wide over, on and across all of the land owned by Vinson on which the main line tram road operated by Mardez Lumber Company was then located. This lease was for a term of five years with the option of renewal for an additional five years and was dated December 6, 1916. The Vinson tenancy agreement was dated December 13, 1916. Both instruments were acknowledged on different dates, the Vinsons' acknowledging the Vinson tenancy agreement December 16th and Lynch Davidson for the Mardez Lumber Company on December 13th, both in 1916, while the right-of-way agreement was acknowledged on the 16th of December 1916 by the Vinsons and the right-of-way agreement by Davidson of Mardez Lumber Company on December 6, 1916. Both instruments were filed for record in the office of the County Clerk of Polk County on December 27, 1916 at 10 o'clock a. m. In the deed from C. C. Vinson and wife to Willie Reinhardt which conveyed the land adjoining the disputed tract there is the following provision: "There is also excepted from this tract the right-of-way for the Mardez Lumber Company until December 6, 1926." Also in the deed from Willie Reinhardt to Julius Reinhardt conveying the land which he purchased adjoining the disputed tract there is the following provision: "—save and excepting from the above field notes 5.44 acres heretofore sold to C. McQueen and ¾ths of an acre conveyed to H. L. Mallott, also right-of-way of Mardez Lumber Company until December 6, 1926." The court's action in excluding from the evidence the right-of-way lease from Vinson to Mardez Lumber Company is the basis of appellant's second point on appeal.

On May 1, 1918, which was during the original five-year term of the said Vinson tenancy agreement, Vinson and his wife conveyed by general warranty deed the two tracts of land which he owned and which adjoined the tract in dispute on the north,

east and west, to Willie Reinhardt, the brother of the appellee Julius Reinhardt. In such deed Vinson retained the right to remain in possession of the premises conveyed until January 1, 1919. This deed was recorded October 3, 1918. On June 29, 1918 Willie Reinhardt conveyed by general warranty deed to the appellee Julius Reinhardt a portion of the land he had purchased from Vinson on May 1, 1918, including all of such premises which adjoined the 29.29 acre tract of land in dispute. This deed was filed for record November 7, 1918. Vinson remained in possession of the land sold by the possession thereof on the part of his tenant, one Cravey. Cravey lived on the land conveyed to Willie Reinhardt and conveyed by him to Julius Reinhardt for about one year prior to the date when Julius Reinhardt and his wife moved on to and occupied the land conveyed to him. The date when Julius Reinhardt and his wife moved in was November 11, 1918. They moved into the house located on the land conveyed, which house was about 150 varas north of the land in dispute.

The land in dispute was under fence at that time, but there was no fence on the boundary line between the tracts of land purchased and the disputed tract. The appellee Julius Reinhardt testified that he thought that it was a part of the land which he bought, the Vinson homestead, and he remained in possession and made some use of it without any knowledge that it was not included in the land which he purchased until 1936. He said he thought Cravey and Vinson used it and that it was in the tract he had bought.

Mr. Julius Reinhardt, the appellee further testified:

"Q. The tract in dispute is as follows: It goes up here (indicating), across here (indicating), comes down here (indicating), and then along the right-of-way, here (indicating)? A. Yes, sir.

"Q. That is the tract you claim limitation on? A. Yes, sir.

"Q. That was not described in this deed under which you moved into your house? A. That's right.

"Q. You stated in your deposition that you thought it was included in the land? A. I thought Cravey and Vinson used it.

"Q. You thought it was in your tract? A. That's right.

"Q. When you bought your land, I suppose you paid Mr. Will Reinhardt for what he sold you? A. Yes, sir.

"Q. And it was good, hard cash money? A. You couldn't make a dollar some times those days.

"Q. Did you read the deed that you got by paying out your money? A. Yes, but I didn't know too much about it.

"Q. You had lived there all of your life? A. Well—

"Q. Since you were two years old? A. Yes, sir; the situation of the place, well, I just didn't pay much attention. I just bought it and went to work.

"Q. Mr. Reinhardt, if you thought that that land was a part of your deed, then, when you moved there in 1918, you didn't have any intention to claim it if it wasn't in your deed. You didn't claim any land that wasn't yours, is that right? A. Well, I thought it was part of the place, and that is the land I had intention of buying, is that tract right in there, yes, sir.

"Q. But you didn't have any intention of claiming it if it belonged to someone else in 1918? A. I would say, yes, because it is part of the place that I was interested in. Had a stock pond on it and pasture.

"Q. Do you mean to say that you weren't careful to go around the boundary lines and watch and see what you were buying? A. The thing was, this land was already fenced, and I was buying the Charlie Vinson homestead, and I just figured on getting the land that he was using.

"Q. You say he was using that, too? A. Yes, he was using it.

"Q. At this time I would like to show you another plat, Mr. Reinhardt. Before I do that, let me ask you about that same subject. When did you first learn that this land wasn't in your deed? A. 1936.

"Q. What time in 1936? A. October."

Vinson used the land as a pasture for horses and cattle. Julius Reinhardt also used the land for pasture for his work stock and for milk cows and also cultivated two small patches of about ½ acre each on which he planted oats. There was evidence also that Julius Reinhardt had cut timber off the land, in 1922, 1928, 1932, and in 1940 but this evidence was limited by the trial court to consideration only to show the extent of Reinhardt's claim as to the boundary, and the exercise of domain over the land in dispute.

On May 1, 1946 Julius Reinhardt and his wife executed two tenancy agreements with the appellant, by which agreements the appellees acknowledged that they became tenants of the appellant company as to certain tracts of land in Polk County of which the land in dispute is a part.

The position of the appellees on the trial was that they had perfected their title to the land in dispute under the 10-year statute of limitation prior to 1946, between November 11, 1918 and January 1, 1946.

The trial court submitted the case to the jury on one Special Issue, which inquired whether Julius Reinhardt and his wife had and held peaceable and adverse possession, as defined in the charge, of the land in suit, for a period of 10 consecutive years, beginning after November 11, 1918 and prior to January 1, 1946. This Special Issue the jury answered in the affirmative.

We will consider the appellant's first and second points together, since by

Point 1 the appellant contends that the trial court erred in not receiving in evidence the Vinson tenancy agreement, and by Point 2 it contends that the trial court erred in refusing to receive in evidence the Vinson right-of-way agreement, execution of which was a part of the consideration for the tenancy agreement. We believe that the trial court was in error in excluding these two instruments from the evidence. The tenancy agreement established C. C. Vinson and wife as tenants of Mardez Lumber Company, which was the predecessor in title of the appellant. This relationship of landlord and tenant was in existence at the time when C. C. Vinson and wife executed a deed to Willie Reinhardt, and at the time when Willie Reinhardt made his deed to the appellees Julius Reinhardt and wife. By the terms of the deed of Vinson to Willie Reinhardt, Vinson, through his tenant Cravey, was in possession of the land conveyed up until the date when Cravey moved off the land and Julius Reinhardt took possession thereof under his deed from Willie Reinhardt on November 11, 1918. Vinson by his right reserved in his deed was entitled to possession of the land conveyed until January 1, 1919. When Julius Reinhardt took possession of the land which had been conveyed to him by his deed he also took possession of the land in dispute at the same time, under the mistaken belief that it was part of the land which he purchased. The land in dispute was not owned by Vinson but Vinson was the tenant of Mardez Lumber Company and its successors in title of the land in dispute. When Julius Reinhardt took possession of the disputed tract in the manner in which he testified he took possession, he placed himself in the shoes of Vinson and he therefore took possession as a tenant.

■■■ The rule that a tenant is estopped to deny his landlord's title, or to claim adversely against him, has long been established in this state. Tyler v. Davis, 61 Tex. 674. The estoppel of a tenant to deny his landlord's title may be asserted not only by his original lessor, but also by those that succeed to his title. It is to the title under which the tenant enters that the estoppel relates and not the individual owner of the title. Wilson v. Beck, Tex.Civ.App., 286 S.W. 315, writ refused. The appellees concede that one who takes possession of land under a tenant and in privity with him, also becomes a tenant and is estopped to deny the landlord's title and if the appellees took possession of the land in controversy in such way as to be in privity with Vinson with reference to the particular land in controversy, they can no more recover by limitation than Vinson himself could. They argue, however, that the appellees are not in privity with Vinson as to the land in dispute but are in privity only as to the land conveyed by Vinson to Willie Reinhardt and by Willie Reinhardt to the appellees. The question for decision then is narrowed down to whether the appellees took the status of tenants when they took possession of the land in dispute. We do not view the fact situation as one in which there is any privity of estate between Vinson and the appellees. We regard it as one involving privity of possession. We think that the essential fact here is that the possession which Julius Reinhardt acquired was that of Vinson, tenant of the appellant's predecessor in title. There was privity of possession between them and a constructive tenancy attached to Julius Reinhardt's possession, whether he knew of the existence of the Vinson tenancy agreement or not. See Buford v. Wasson, 49 Tex.Civ.App. 454, 109 S.W. 275; Overstreet v. Houston Oil Co., Tex.Civ. App., 64 S.W.2d 354, writ refused. The appellees argue that Julius Reinhardt did not succeed to the possession of Vinson and therefore was not in privity with him. They say that if Julius Reinhardt, in making his claim of limitation were attempting to make use of the possession of the disputed land by Vinson a part of his claim for limitation by the process of tacking possession on to Reinhardt's possession *and* if Vinson were not a tenant but was claiming the land as a naked trespasser, then Vinson's use and possession and delivery to Reinhardt of possession was not such as would inure to the benefit of Julius Reinhardt in his claim of limitation, and that therefore it was not such a use and possession and delivery or possession as would put Julius Reinhardt in

privity with Vinson and make him a tenant under the Vinson tenancy agreement. While this may be true, such an argument is of no force here because of the very fact that Vinson was a tenant by express written agreement with Mardez Lumber Company which was of record at the time Julius Reinhardt went into possession of the disputed tract; as a tenant Vinson had the right to possession and use of the disputed land and was in possession by his tenant, Cravey. Reinhardt's possession and use of the land in dispute was the same as Vinson's had been, in the view of the true owner. Actually there was privity of possession between Julius Reinhardt and Vinson from the time Reinhardt took possession under the circumstances outlined in the statement above. See West Lumber Co. v. Sanders, Tex.Civ.App., 225 S.W. 828, writ ref. Since these facts show such privity of possession, Vinson's tenancy agreement should have been received in evidence.

Likewise the right-of-way agreement from Vinson and wife to Mardez Lumber Company should have been received in evidence, and for the same reasons as obtained for the admissibility of the tenancy agreement. It was the consideration for the execution of the tenancy agreement and the right-of-way granted therein was referred to in the deed from Willie Reinhardt to Julius Reinhardt conveying the land adjoining the land in suit. It was mentioned in both deeds, from Vinson and wife to Willie Reinhardt and the deed from Willie Reinhardt to Julius Reinhardt.

Appellant complains by its third and fourth points of the trial court's action in overruling its objection to the Special Issue submitted to the court in its charge to the jury. The one Special Issue submitted was as follows:

"Special Issue No. 1

"Do you find from a preponderance of the evidence, that Julius Reinhardt and wife, Kittie Reinhardt, had and held peaceable and adverse possession, as hereinbefore defined, of the land involved in this suit, as described in plaintiffs' original petition, for a period of ten consecutive years, beginning after November 11, 1918, and prior to January 1, 1946? Answer 'Yes' or 'No.' "

The objections were that the issue did not contain the proper statutory requirements for adverse possession under the 10-year statute of limitation, and that it did not contain the words "using, cultivating or enjoying" or any such words and that such words, "using, cultivating or enjoying" were not elsewhere used in the charge in explanation of or definition of the requirements of adverse possession under said statute. The court's charge contained the following definitions: "Peaceable possession" as herein used is such as is continuous and not interrupted by adverse suit to recover the estate." "Adverse possession" as used herein is an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another. By "claim of right" as herein used is meant an intention on the part of the person or persons making such claim to claim the land as his own. By "hostile" as herein used is meant the holding and using of land with intent to claim the land to the exclusion of all persons. "Peaceable and adverse possession" as used herein is meant such possession as is actual, continuous, visible, exclusive and hostile. It must be such possession as is open and of such a character as would indicate clearly to the owner of the land that the occupant was claiming the same."

We believe that the court's charge is subject to the criticism made by the appellant's Points three and four. The appellees, in their suit based upon the 10-year statute of limitation for the recovery of land, undertook the burden to establish limitation title and in doing so were required to prove cultivation, use or enjoyment of the land as well as possession and adverse claim. If they did so they should have had a finding by the jury to that effect and the issue should have included such an inquiry. The finding of peaceable and adverse possession in the jury's verdict in this case without the further finding that they

had either used, cultivated or enjoyed the land for the limitation period was not sufficient. See McKee v. Stewart, 139 Tex. 260, 162 S.W.2d 948 by the Commission of Appeals, opinion adopted by the Supreme Court; Cook v. Winter, Tex.Civ.App., 207 S.W.2d 145, writ ref. n. r. e. The appellees, in answer to these points, discuss the facts in evidence and say that there was not sufficient cultivation of the land shown to warrant the court in submitting that feature of the limitation claim in its charge. They also assert that this court is bound by the jury's verdict and that neither the trial court nor the appellate court can usurp the function of the jury in the findings of fact, and that the judgment should be permitted to stand. We do not consider that to be the issue raised by and discussed under these points of the appellant. We have examined the court's charge as set out above and find no reference in any of the definitions to the cultivation, use or enjoyment of the land in suit. Neither "use, cultivation, nor enjoyment" is contained in the Special Issue submitted in the court's charge. This was error on the authority of the cases cited immediately above.

■ By its Points Nos. 5 to 14, inclusive, considered together in its brief, the appellant complains of the court's action in refusing its requested instruction No. 1, for the court's charge, of the court's action in overruling its objection to the charge, of its failure to instruct the jury in various details as to what testimony is necessary to show constructive notice of hostile and adverse possession and use on the part of the limitation claimant. We will not go into a discussion of these points, but we have examined them all and have concluded they present no error. The court's charge contained a correct definition of peaceable and adverse possession. We do not believe that the charge requested by the appellant was required under the evidence in the record.

■ Appellant's fifteenth point is: "The court erred in admitting the testimony of appellee Julius Reinhardt attempting to vary the terms of the written tenancy agreements identified as defendant's exhib-

its Nos. 55 and 56." The trial court received in evidence the two tenancy agreements signed by Julius Reinhardt and his wife on May 1, 1946 which provided that the appellees became the tenants of the appellant Angelina County Lumber Company as to several tracts of land, including the land in suit. They were in the statement of facts as Exhibits 55 and 56. Mr. Reinhardt was permitted to testify thereafter, over the objection of the appellant, that Mr. G. C. Mettauer, an employee of the appellant, came to him the day before the leases were signed and pointed out to Mr. Reinhardt where the boundaries of the land to be leased would run. The objection by the appellant was that "since the evidence showed that Mr. Reinhardt had signed the leases, such testimony would have no bearing on the instrument and would be inadmissible to change the terms of the lease." We think it is well established that parol evidence is not admissible to show that less land was intended to be conveyed than appears from a deed itself. Huddleston v. Allen, Tex.Civ.App., 85 S.W.2d 1094. Since the testimony objected to obviously purported to show that the witness one of the parties to the lease or tenancy agreements, intended to become a tenant as to more land or less land or different land from that described in the instruments themselves, his testimony was subject to the objection made and should not have been admitted.

For the errors pointed out the judgment of the trial court is reversed and the cause is remanded to the trial court. Since upon another trial the Vinson tenancy agreement and the right-of-way agreement will be received in evidence, the court's charge should include appropriate instructions as to notice by the limitation claimant of the repudiation of his constructive tenancy and if the evidence should raise the issues, appropriate issues should be submitted as to whether the character of the possession and use of the land was such as to charge the true owner with notice that the tenancy was repudiated and that the claimant's possession and use was hostile and adverse.

Reversed and remanded.