W. J. MEEK et ux., Appellants,

v.

Mrs. Thelma BOWER et vir, Appellees.

No. 13088.

Court of Civil Appeals of Texas.

Houston.

Feb. 25, 1960.

———◆———

Strong, Baker & Compton, John L. Compton, Houston, for appellants.

W. M. Latham, De Lange, Hudspeth & Pitman, Albert J. De Lange, C. M. Hudspeth, Eugene J. Pitman, Houston, for appellees.

WERLEIN, Justice.

This suit was brought by appellees, Mrs. Thelma Bower and husband, C. P. Bower, against a number of defendants, including W. J. Meek and wife, Rose Meek, in trespass-to-try title to establish title and recover possession of a portion of the Jules Hirsch Subdivision in the J. B. Jones One-Third League in Harris County, Texas. Through orders of severance and the dismissal of Mollie Meek, who died after suit was filed, all defendants except appellees, W. J. Meek and wife, Rose Meek, were disposed of prior to trial. Appellants disclaimed all the land except a .7 acre tract. Upon trial before a jury, appellees introduced documentary evidence of their record title, and evidence as to the location of the property. Appellants relied upon their claim of adverse possession under the ten year statute of limitation. Appellants have perfected their appeal from the judgment rendered on the jury's verdict.

Appellants, by Points 1, 2, 4 and 5, complain that the Court erred in refusing to grant their motions for an instructed verdict when appellees rested and at the close of all the evidence, and in refusing to grant

their motion for judgment non obstante veredicto, and in peremptorily finding that appellees owned the record title to the property.

The only attack made by appellants upon the record title of appellees is in connection with that certain deed from Maurice Hirsch et al. to appellee, Thelma Bower, purporting to convey, among other tracts, "The Jules Hirsch Subdivision, of approximately 69 acres, in the John Brown Jones Survey, Abstract 484." Following such description, the deed contains, among other reservations, the following:

"together with all other right, title and interest of Maurice Hirsch, Josie Hirsch Bloch and Rosetta Hirsch Weil in and to any other areas in said John Brown Jones Survey, Abs. 484, and James Strange Survey, Abs. 695, whether or not included in the subdivision or descriptions hereinbefore referred to, and wherever situated in said Surveys, except as to any right, title and interest of the Grantors herein in any portion of the John Brown Jones Survey lying South of the Jules Hirsch Subdivision in the said John Brown Jones Survey, and also except as to any interest conveyed by separate deed of this date from Maurice Hirsch to the Grantee herein."

Appellees described the land sued for in their amended petition as:

"All that portion of the Jules Hirsch Subdivision at Humble, Texas, in the J. B. Jones ⅓ League, in Harris County, Texas, according to the revised map of the Subdivision recorded in Volume 1, Page 97 of the Map Records of Harris County, Texas, lying South of First Street and East of the Humble branch of the Atascaseta County Road as shown on said revised map * * *"

In their trial amendment they added to the description:

"including, whether or not specifically described, all land lying south of

First Street and East of the Humble branch of the Atascaseta County Road in the Jules Hirsch Subdivision as depicted in map recorded in Volume 1 at Page 96 of the Harris County Map Records (Plaintiffs' Exhibit No. 103 being a photostatic copy of the same)."

Appellees offered in evidence the map of the Jules Hirsch Subdivision filed November 11, 1904 and recorded in Volume 1, p. 96 of the Harris County Map Records, and also the revised map filed November 15, 1904 and recorded at page 97 thereof. The map recorded at page 96 is similar to the revised map except the latter shows lying south of Second Street a large block or tract of acreage which on the earlier map is subdivided into approximately seven numbered blocks containing numbered lots and several named streets. Said maps will be referred to as Map 96 and Map 97.

It is appellants' contention that the earlier Map 96, which shows the subdivision of the large tract south of Second Street, has been superseded by Map 97 which shows such tract only as acreage, and that as a result thereof, the Jules Hirsch Subdivision has been limited and confined to the land lying north of Second Street, and hence the aforesaid deed which specifically covers only the Jules Hirsch Subdivision does not include that portion of the .7 acre in controversy lying south of Second Street for the reason that the Subdivision does not extend south of Second Street. The deed in question excepts any portion of the John Brown Jones Survey lying south of the Jules Hirsch Subdivision.

Even if we assume that the description of the property in appellees' petition did not include the land south of Second Street, the trial amendment which referred to Map 96 did unquestionably include it. The deed in question also included it unless the Subdivision did not extend south of Second Street. The question is, therefore, did appellees' proof establish as a matter of law that the tract of land south of Second Street is a part of the Jules Hirsch Subdivision?

We think that a proper construction of Map 97 shows that the area south of Second Street is a part of the Subdivision. In the dedicatory language of such plat, it is stated:

"The consideration for which this dedication is made is the recall of the former map and plat of the subdivision heretofore filed and recorded in Harris Co. record of maps and plats, Volume 1, page 96, and substitution therefor of this plat which is hereby named and designated as the revised map of the Jules Hirsch subdivision of a portion of the Humble homestead in the J. B. Jones One-Third League at Humble, Harris County, Texas, for identification."

It thus appears that the revised Map 97 covers and includes the same property as Map 96. Map 97 is being substituted for Map 96 as the plat of the Subdivision. This amounts to a reference to Map 96 for a description of the land intended to be subdivided. It will be noted that the lots and blocks as shown on Map 96 are by no means all uniform in size. Some of the blocks are much larger than others, and the lots vary from as small as 50′ x 100′ to lots as wide as 136.59′ and as deep as 318.9′ containing approximately an acre each. The lots and blocks on Map 97 are the same except that the numbered blocks and lots and streets in the area south of Second Street have been eliminated and such area fronting north on Second Street and west on the Atascaseta County Road remains as one large block of approximately 17 acres, according to our calculation from the maps.

The heading on Map 97 is "Revised Map of The Jules Hirsch Subdivision at Humble in the J. B. Jones ⅓ League". Then there appears printed across the Subdivision, including said large block of 17 acres, "Jules Hirsch Subdivision", with the first

two words "Jules Hirsch" actually printed across the 17 acre block. This is of considerable significance because such words were not printed across the Subdivision on Map 96. It thus appears that the subdivider wanted to make it clear that such area was included in the Subdivision as shown on Map 97. Moreover, the deed in question conveys to appellee, Thelma Bower, "The Jules Hirsch Subdivision of approximately 69 acres * * *" If the 17 acre tract is not included in the Subdivision, the remaining acreage will be much less than 69 acres, according to our calculations based on Maps 96 and 97.

■ Although appellants assert in their brief that the question as to whether the 17 acre block is a part of the subdivision is a question of law to be determined by construing Map 97, they contend Plaintiffs' exhibit No. 80, which is a copy of the assessor's block book, shows written on such block the words "Carried with Jules Hirsch Subd." with a hook symbol joining such block with the Subdivision. We attach no significance to the assessor's block book which is not rereferred to on the map to be construed and which was evidently made for the use and convenience of the assessor of taxes. Nor do we attach any signficance to the lettering on Map 97 of the words "Humble branch of Atascaseta County Road" appearing farther north on Map 97 than on Map 96. The location of the names of several of the streets is different on the two maps.

■ If we are wrong in our construction of Map 97 and if there is any ambiguity therein which would permit the introduction of extrinsic evidence such as appellees' Exhibit No. 80, as argued by appellants, then it is our view that the extrinsic evidence introduced by appellees corroborates the conclusions hereinabove reached, that the tract of approximately 17 acres as shown on Map 97 is in fact a part of the Subdivision and was so intended to be by the subdivider. The uncontradicted testimony of witness Hirsch shows that the entire 69 acres subdivided by the original plat and including the portion south of Second Street has been generally considered and had the general reputation since 1904 as being the Jules Hirsch Subdivision, and according to the witness Fones, it is so regarded by surveyors generally. Such testimony was uncontradicted and was the proper subject of a finding by the court.

■ We are further of the opinion that appellants have failed to introduce any evidence of probative force which would warrant the submission to the jury of any fact issue with respect to whether the block south of Second Street is a part of the Subdivision. Appellees have discharged the burden of locating and describing the land sued for with sufficient certainty to meet the requirement of such authorities as Sayers v. Davis, Tex.Civ.App., 51 S.W. 520, error denied; Stovall v. Finney, Tex. Civ.App., 152 S.W.2d 887; Uvalde County v. Oppenheimer, 53 Tex.Civ.App. 137, 115 S.W. 904, and 41–a Tex.Jur. 659–660, Trespass to Try Title, § 132.

City of Dallas v. Leake, Tex.Civ.App., 300 S.W.2d 135, writ ref., relied on by appellants, is distinguishable. In that case a dedicated map showed named streets and also a vacant 32 foot strip of land open at both ends lying between platted lots and a railroad track. The court held that there was nothing on the plat to indicate an intention to dedicate the strip as a street. Had there been such intention, it seems probable that a name would have been given to the vacant strip as was done in the case of the dedicated streets. In the present case, the area in question does bear the name of the Subdivision, "Jules Hirsch".

We think there is another reason why the instructed verdict as to the record title, and the court's refusal to render judgment non obstante veredicto, were proper. Indeed, as contended in appellees' Counter-Point No. 2, an instructed verdict as to the entire case, had it been given, could be upheld, based upon the evidence consid-

ered in the light most favorable to appellants.

The testimony showed that prior to appellants' going into possession of the property in controversy, one T. J. Ivy was a tenant of Jules Hirsch and that he paid rent for the use of the premises to one Doc Gryder, who was an employee of Jules Hirsch, the undisputed record owner of such land at such time, and the predecessor in title of appellees. T. J. Ivy made no claim to own the land. By bill of sale dated January 8, 1923, he sold the house upon the property in controversy to one G. L. Durdin. Durdin did not claim to own any of the land during the time that he occupied the property.

Appellants, W. J. Meek and wife, Rose Meek, at the time of the trial of this cause, claimed title to the land in controversy. Meek testified that he went into possession of the property under and by virtue of a sale from G. L. Durdin, which sale was evidenced by a written instrument which Meek described as a deed. Such instrument (appellees' Exhibit No. 125) was shown to be in fact merely said bill of sale from T. J. Ivy to G. L. Durdin, of a 3-room house. It describes no land. Below the acknowledgment thereof appears the notation: "The above property was transferred to W. J. Meek. Sold all property to W. J. Meek the 16 Day of November, 1924 A. D. G. L. Durdin." Thus, according to Meek's own testimony, he took over the possession of the premises from Durdin who had bought the house from Ivy, a rent paying tenant of the record owner.

There is no evidence in the record tending to show that appellants ever informed Jules Hirsch or any of his devisees of any change in the character of appellants' occupancy, or that any repudiation of the tenancy was ever brought to the knowledge of the record owners. Appellant Meek testified that he never saw or knew the record owners of the property, and appellees' witness, Maurice Hirsch, one of the devisees and independent executor under the will of Jules Hirsch, testified that he knew nothing of W. J. Meek, although he had made several inspections of the property.

The law is well settled that a tenant is estopped to deny his landlord's title or to claim adversely to the landlord or to those who succeed to the original landlord's title. Houston Oil Co. of Texas v. Moss, 1955, 155 Tex. 157, 284 S.W.2d 131; Tyler v. Davis, 1884, 61 Tex. 674; Benskin v. Barksdale, Tex.Com.App.1923, 246 S.W. 360.

It is also well settled that the relation of landlord and tenant, when once established, attaches to all who may succeed the original tenant until a positive repudiation of the tenancy is brought to the attention of the landlord, against whom title by adverse possession is claimed. Houk v. Kirby Petroleum Co., Tex.Com.App.1930, 65 S.W.2d 496; Angelina County Lumber Co. v. Reinhardt, Tex.Civ.App.1954, 270 S.W.2d 259; Wilson v. Beck, Tex.Civ.App. 1926, 286 S.W. 315, writ ref.; Benskin v. Barksdale, supra; Dietzman v. Sayles, Tex. Civ.App.Galveston 1922, 245 S.W. 773.

In Houk v. Kirby Petroleum Co., supra, the court stated with respect to the claim of one succeeding to the rights of the original tenant:

"The law of this state exacts from tenants the exercise of the utmost good faith in carrying out the tenancy relationship when once established. This rule also applies to persons acquiring title and possession whether by inheritance or by purchase from the tenant. Nothing short of an open, positive, and visible repudiation of that trust will suffice to start the running of the statute of limitation." [65 S.W. 2d 499.]

In Benskin v. Barksdale, supra, the court stated:

"One succeeding to the possession of a tenant holding over, whether by purchase or inheritance, is equally dis-

qualified with the original tenant to set up his possession as adverse to the landlord's right. [citing authorities]" [246 S.W. 362.]

See also Angelina County Lumber Co. v. Reinhardt, supra, for a clear statement applicable to the factual situation in the present case.

We are of the opinion that what has been said hereinabove disposes of this appeal. Nevertheless, we shall briefly discuss appellants' other Points of Error.

By their third Point appellants complain that the trial court erred in rendering judgment for appellees upon the jury's verdict. This Point is so broad and indefinite that it scarcely warrants consideration. Under it, however, appellants contend that there is no evidence in the record to support the submission of Special Issue No. 1, which submits in the usual wording the issue of ten year limitation, and also no evidence in the record to support the submission of Special Issues Nos. 2, 3 and 4, inquiring whether W. J. Meek had his mother's consent to enter upon the land to acquire it for himself by adverse possession, and whether Mollie Meek's possession of the property was in recognition of the title of the record owners, and whether she purchased the house from Durdin.

We think there is ample evidence warranting the submission of such Issues. The evidence shows that appellant Meek claimed that he obtained possession of the property from G. L. Durdin, who purchased the house from T. J. Ivy, tenant of appellees' predecessor in title, Jules Hirsch. We find no evidence, other than Meek's word, of his emancipation or of any consent on the part of Meek's mother that he acquired the property. There is other evidence to the effect that the only possession of the property was held by Mollie Meek, who held under Durdin and who acknowledged her tenancy to the owners of the property on at least two occasions. The testimony of appellant, W. J. Meek, shows that Mollie Meek actually lived upon the property in controversy at the times she acknowledged her tenancy under Hirsch. It was shown by Mrs. Pautra, of the State Department of Public Welfare, that she had an interview with Mrs. Mollie Meek and her son, Willie, on about April 16, 1945, and that Mrs. Meek or Willie, while they were both present, stated they lived together in a house consisting of four rooms, owned by Willie. However, they did not claim the land. There was evidence that at the time Mollie Meek and her son, W. J. Meek, moved upon the land, Willie was a young, teenage boy. The witness Hirsch testified to the payment of rental to him by Mrs. Mollie Meek in 1926, at which time she lived in the house on the property in controversy and acknowledged her tenancy.

Appellants did not object to the submission of Special Issues Nos. 1, 2 and 3. Nevertheless, under Rule 279, Texas Rules of Civil Procedure, they may assert that there was no evidence sufficient to warrant the submission of such issues. We have carefully examined the testimony and exhibits and have concluded that there was ample evidence to warrant the submission of all four issues. Since there is evidence of probative force supporting the jury findings, this Court will uphold the same, although there may be conflicts in the testimony. Choate v. San Antonio & A. P. R. Co., 91 Tex. 406, 44 S.W. 69; Oats v. Dublin Nat. Bank, 127 Tex. 2, 90 S.W.2d 824; Long-Bell Lumber Co. v. Bynum, 138 Tex. 267, 158 S.W.2d 290; Young v. Fitts, Tex.Civ.App., 183 S.W.2d 186, ref. w. m.

Appellants complain that the court erred in admitting in evidence plaintiffs' Exhibits 80 to 101, which are photostatic copies of maps from the office of the tax assessor and collector of Harris County, covering various tracts of land in the John Brown Jones Survey. Counsel for appellants and appellees entered into an agreement for the use of photostatic copies or examined copies from certain offices, including any tax office. Such exhibits show the

general location of the Jules Hirsch Subdivision upon which taxes were paid, as well as other tracts in the John Brown Jones Survey. Receipts for payment of such taxes were also introduced in evidence. Moreover, the subdivisions were located by testimony of witness Fones, a surveyor, and there was no question raised concerning their location other than appellants' contention that the property south of Second Street was not in the Jules Hirsch Subdivision. We think the admission of such exhibits was not error—certainly not such error as was calculated to cause and probably did cause the rendition of an improper verdict. Rule 434, T.R.C.P.

We do not think there was any error in the admission of appellees' Exhibits 123 and 211, which in effect show Mollie Meek's recognition of the title of appellees' predecessor in title. Exhibit 123 was introduced upon proof of execution by comparison of the signature thereon with an admittedly genuine signature appearing on appellees' Exhibit 122, which is an application for old age assistance bearing the signature of Mollie Meek. The testimony shows that Mollie Meek lived upon the property in controversy at the time such application was made and also in 1939, the date of her acknowledgment of tenancy, as evidenced by appellees' Exhibit No. 123. Appellees' Exhibit 211, which is a memorandum on a sheet detached from a record book regularly kept by Jules Hirsch in his lifetime, also shows the tenancy of Mrs. Meek. We think it was sufficiently proved as a memorandum under Art. 3737e, Vernon's Ann.Tex.St. The evidence shows that the property referred to in Exhibit 123 is the property in question. There is no evidence that Mrs. Meek at such time had possession of any other property, and the record shows that the property referred to is the property in controversy in the present suit.

By their last Point appellants contend that the court erred in admitting the testimony of G. L. Durdin that he sold the house to Mrs. Mollie Meek for the reason that such testimony was in contradiction of the notation on the lower part of the bill of sale from Ivy to Durdin hereinabove referred to.

Appellants did not object to Durdin's testimony that he sold the house to Mrs. Mollie Meek, nor to the testimony of Mrs. Durdin that payments on the house were made to her by Mrs. Mollie Meek. They now contend, however, that such testimony violates the parol evidence rule and that appellees are bound by Exhibit 125 introduced in evidence by them, and further that such testimony constitutes the sole support to Special Issues Nos. 1 and 4. We do not agree. Durdin never testified that he executed the questioned portion of the exhibit. Although he finally admitted his signature on a piece of paper pasted onto the sheet of paper containing the questioned portion of the exhibit, he did not remember the writing above his signature, and testified if it was his signature it was changed; that he did not sell the property to W. J. Meek, and that he had no dealings with him, and that as soon as he sold the house to Mrs. Mollie Meek she moved in.

Parol evidence is admissible to prove nonexecution or nondelivery of an instrument. Wheeler & Wilson Mfg. Co. v. Briggs, Tex.1891, 18 S.W. 555; McCartney v. McCartney, 1900, 93 Tex. 359, 55 S.W. 310; Moore v. Wilson, Tex.Civ. App.1940, 138 S.W.2d 1099, writ ref.

The instrument in question was introduced after W. J. Meek testified that he had a deed to the property, for the purpose of refuting his testimony. Hence appellees are in no way bound by such notation on the lower portion of the sheet of paper containing the bill of sale from T. J. Ivy to Durdin, and they are not estopped to disprove it. Masterson v. Bouldin, Tex.Civ.App., 151 S.W.2d 301, writ ref.; Universal Credit Co. v. Boling, Tex.Civ. App.1937, 108 S.W.2d 836; Brumit v. Co-

kins, Tex.Civ.App.1955, 281 S.W.2d 154, ref., n. r. e.

Appellants' claim of adverse possession was submitted to the jury after extensive testimony, and the jury's findings are adverse to their claim. If the jury had found otherwise, we think appellees would still be entitled to judgment in view of the uncontradicted evidence showing that appellants hold directly under an acknowledged tenant, and there has never been any repudiation of the tenancy.

The judgment of the Trial Court is affirmed.